Margaret O'DONNELL, Appellant,

v.

**LABOR AND INDUSTRIAL RELATIONS COMMISSION et al., Respondents.**

No. 39190.

Missouri Court of Appeals, St. Louis District, Division One.

March 21, 1978.

Joseph B. Lavin, St. Louis, for appellant.

*vice Commission of the City of St. Louis,* 546 S.W.2d 36, 37[1] (Mo.App.1976).

Rick V. Morris, Acting Chief Counsel, Charles B. Fain, Labor and Indus. Relations Comm., Jefferson City, for respondents.

CLEMENS, Presiding Judge.

Plaintiff Margaret O'Donnell, formerly employed by defendant H. A. Pope and Sons, Inc. (Pope), has appealed from the denial of unemployment compensation benefits. Plaintiff quit her job rather than accept re-assignment. The issue is whether she quit for "good cause." Section 288.050, RSMo.1969. We conclude she did not and affirm the denial of unemployment benefits.

For two years plaintiff had worked for Pope as a cook, "a general kitchen worker." She was re-classified as a "manager-trainee," and for the next two years worked at different cafeterias, getting experience in several areas of kitchen work. When the last operation closed, Pope had no other "trainee" positions available and re-assigned plaintiff to her former position as a cook at another location. As such, plaintiff's compensation would be increased slightly and her working hours would be shortened, but plaintiff quit and applied for unemployment compensation.

In her appeal from the initial adverse ruling, plaintiff pleaded that the change in employment from trainee to cook would be "detrimental to my image." At the hearing plaintiff explained: "I just liked the position that I had, you know, being the trainee." Her supervisor testified plaintiff had told him her objection to a transfer was that "she would be working with people who she had worked with before as a supervisor and now would be working with them in their same peer group." There was no evidence plaintiff had objective reasons for quitting.

Based on this evidence, the Industrial Commission held plaintiff had "left her work voluntarily without good cause." On plaintiff's appeal to the circuit court, Judge Hart filed a comprehensive memorandum distinguishing the out-of-state cases on which plaintiff relied, and concluded: "The question in this case is whether the petitioner had good cause to leave her employment because she could no longer work as a manager-trainee. I have concluded that she did not. . . . I can't say as a matter of law that petitioner had good cause to leave her employment." Two Missouri cases on unemployment compensation support Judge Hart's conclusion.

*Citizens Bank of Shelbyville v. Industrial Com'n*, 428 S.W.2d 895 (Mo.App.1968) concerned the rights of a clerical employee to unemployment benefits. She quit because her supervisor "gave her 'the cold treatment every morning'" and would "just speak to me when it had something pertaining to the bank." In denying compensation we declared: "The law excludes from benefits employees who leave their employment without good cause (§ 288.050, subd. 1[1]). We must interpret the words 'good cause' by their plain and rational meaning in the light of the purpose of the Employment Security Law . . . We hold that good cause for voluntary unemployment is limited to instances where the unemployment is caused by external pressures so compelling that a reasonably prudent person would be justified in giving up employment . . . The quitting must be for such a cause as would reasonably motivate in a similar situation the average able-bodied and qualified worker to give up his or her employment with its certain wage rewards in order to enter the ranks of the 'compensated unemployed.' . . . A harmonious relationship with a supervisor helps to make an employee's work pleasant. But the Employment Security Law was designed to avoid the menace of economic insecurity, not to make work pleasant for employees."

In *Bell St. Bank v. Ind. Com'n Div. of Emp. Sec.*, 547 S.W.2d 841 (Mo.App.1977), four employees quit and sought unemployment benefits. Their stated reasons were three proposed changes in employment: wage payment dates, sick leave benefits and working hours. In ruling against the employees' right to benefits the court held an employee must demonstrate "a genuine desire to work and be self-supporting." The court ruled that "good cause" for quit-

 

ting did not embrace "every 'reason' which appeals to an employee's head or heart." The court concluded: "To constitute good cause, the circumstances motivating an employee to voluntarily terminate employment must be real not imaginary, substantial not trifling, and reasonable not whimsical, and *good faith* is an essential element. The standard as to what constitutes good cause is the standard of reasonableness as applied to the average man or woman, and not to the supersensitive."

Applying the principles of these two cases, we conclude plaintiff's subjective reasons for refusing re-assignment and quitting her job did not constitute "good cause" and she was not entitled to unemployment compensation.

Judgment affirmed.

SMITH and McMILLIAN, JJ., concur.