Merrimack
No. 78-262

DONALD PHILBROOK

v.

BENJAMIN C. ADAMS, COMMISSIONER, & a.

May 9, 1979

*New Hampshire Legal Assistance* (*Bjorn R. Lange,* of Concord, orally), for the plaintiff.

*Edward F. Smith* and *Michael M. Black,* of Concord (*Robert L. Hermann, Jr.* orally), for defendants.

DOUGLAS, J.   This is an appeal pursuant to RSA 282:5 G from the denial of the plaintiff's claim for unemployment compensation bene-

fits. After a department certifying officer determined that the plaintiff was ineligible for certain unemployment benefits, the plaintiff unsuccessfully appealed the denial to the department's appeal tribunal. A hearing was held before a Master (*Robert A. Carignan*, Esq.), pursuant to an appeal to superior court. The master recommended judgment for the defendant department. His recommendations were approved by the Superior Court (*Mullavey*, J.). All questions of law and exceptions were reserved and transferred to this court by *Keller*, C.J. The plaintiff contends that the master's conclusion that he was unavailable for work is erroneous as a matter of law. He also argues that he was entitled to timely and adequate notice of what constituted "suitable" employment and a reasonable search for employment.

The plaintiff, thirty-eight years old, is a clinical psychologist by education, training, and experience. He has a master's degree in clinical psychology and has earned sixty credits towards his doctorate. He has published two articles in professional journals. From 1967 to 1971, he worked as a psychologist for the Maine Department of Mental Health and Corrections. During this period he was also a private psychological consultant to a number of schools for the mentally retarded. He next served as a staff psychologist at the University of Maine student counseling center from 1971–1972. He then accepted a position with the Comprehensive Community Mental Health Center in Bangor, Maine to perform psychological testing, evaluation and psychotherapy. In 1974, he took a break from his chosen profession and worked for several months for a sporting goods manufacturer. In May 1974 he was hired by New Hampshire Hospital as a psychologist. He voluntarily left this position on January 31, 1976, to begin a position as a psychologist in Florida. Due to lack of funding, this position became unavailable.

In May 1976, the plaintiff returned to his parents' home in Maine and filed an initial interstate claim through the Maine Department of Employment Security. The New Hampshire Department of Employment Security (hereinafter the department) denied him benefits from January 31, 1976, on the grounds that he left the New Hampshire Hospital voluntarily and without good cause attributable to his employer. On August 2, 1976, after his twenty-six week disqualification period ended, he filed a claim again and was found eligible. On August 9, 1976, citing his extended unemployment, the department sent a request to the Maine office concerning the nature of the plaintiff's work search and asking whether he was registered under a secondary occupation. The plaintiff replied by summarizing his job search contacts on the department's request form.

Three weeks later, the plaintiff was hospitalized for chronic alcoholism. His benefits were reinstated on September 20, 1976. On December 22, 1976, due to his continued unemployment, the department sent another inquiry to the Maine office which asked if the plaintiff was restricting his employability and advised him to "broaden his search for work." The Maine office apprised the plaintiff of the department's advice and informed the department "he does not seem to be restricting his employability and is willing to accept wages that this state offers." At this point the plaintiff had received fifteen weeks of benefits and had been unemployed for almost a year.

The plaintiff continued to receive benefits until January 14, 1977, when he was again hospitalized for alcoholism. On February 10, 1977, the plaintiff was released for work pursuant to his physician's report. Thereafter he continued to file weekly claims and was denied benefits "as of February 27, 1977, until available." After a hearing held on June 15, 1977, the appeal tribunal's adverse decision was mailed to plaintiff on June 17, 1977. Both parties agree that the sixteen weeks from February 27, 1977, through June 18, 1977, or a total of $1,520, is the subject of this appeal. The plaintiff's last filing for benefits that was before the appeal tribunal was for the week ending June 18, 1977; he subsequently found employment at Blue Ribbon Shoe in Exeter.

The plaintiff's efforts to find work during this period are not disputed. He sent out resumes, telephoned, or personally visited over one hundred employers in response to advertised job vacancies in the *Boston Sunday Globe* and an employment bulletin for psychologists. These vacancies ranged from professional positions requiring a master's degree in psychology to nonprofessional human service jobs including house parent, vocational counselor, and camp counselor. Of the sixty written contacts tabulated for submission to the appeals tribunal, nine positions were in Maine and fifty-one were in other States. He interviewed for several of these out-of-State positions.

Towards the end of the period in question, the plaintiff contacted several shoe factories, and took a mathematics test to qualify for a job taking supermarket inventories, in addition to his other efforts. The Maine employment office referred him to a CETA-funded statistical job for which he was deemed overqualified. The plaintiff never refused a job offer or job referral from the Maine office, including an offer of a position as a laborer at the Bangor State Fair. He obtained his present position as a staff psychologist at the Melrose Wakefield Hospital in Massachusetts by responding to an advertisement in the *Boston Sunday Globe*.

■ RSA 282:3 C provides that to be eligible for benefits, the commissioner must find that

> he [claimant] is ready, willing and able to accept and perform suitable work on all the shifts and during all the hours for which there is a market for the services he offers and that he has exposed himself to employment to the extent commensurate with the economic conditions and the efforts of a reasonably prudent man seeking work.

It is well established that to be "ready, willing and able" to accept suitable work does not demand total availability. *St. Germain v. Adams*, 117 N.H. 659, 377 A.2d 620 (1977); *Goings v. Riley*, 98 N.H. 93, 95 A.2d 137 (1953). In *Goings v. Riley*, we stated that if "the claimant is ready to accept suitable work which he does not have good cause to refuse, he is considered attached to the labor market and available." *Id.* at 94, 95 A.2d at 139. This does not mean that job vacancies must actually exist. It is only necessary that there is a market for the claimant's services in the geographic area in which he is offering them.

RSA 282:3 C further requires that the plaintiff demonstrate "the efforts of a reasonably prudent man seeking work." In *London v. Board of Review*, 244 S.E.2d 331 (W. Va. 1978), the court explained that the standard of reasonableness as applied to a work search requirement varies with the nature of the work.

> Any "reasonableness" standard for interpreting how much job-hunting is required of any individual who is determined to find employment for which he or she is equipped by training or experience, would require less exertion by the teacher or social worker, than by the cook or driver for whom there may be many more prospective employers. The person who is capable of doing only menial or "common" labor, and who therefore might be more likely to find work through door-to-door solicitation, is, if "reasonableness" prevails, subjected to that chore; while others, whose talents and education have prepared them for more sophisticated callings, would not be so subjected.

244 S.E.2d at 336. The test of reasonableness in this case is whether the plaintiff did what a reasonable unemployed psychologist with ten years experience and a master's degree would do to obtain work suitable for him. The master found that individuals with the plaintiff's vocational and educational experience obtain suitable work by use of

resumes, personal contacts, and review of professional publications. He further found that as of February 10, 1977, the plaintiff was medically able to perform his usual work; and that after February 1977, the plaintiff increased his contacts with employers, sought work outside New England, and sought work not requiring a master's degree. There was undisputed evidence that the plaintiff sought inventory, statistical, and unskilled work.

The master further found, however, that the plaintiff so limited his search for acceptable positions that he was detached from the labor market and did not have good prospects for suitable work in his customary occupation. Accordingly, the master concluded that "the plaintiff did not expose himself to employment to the extent commensurate with the efforts of a reasonably prudent man seeking work nor was he willing and able to accept and perform suitable work other than work related to his profession as a psychologist," and was therefore unavailable for work under RSA 282:3 C. We hold that the conclusion the master drew from his application of the "reasonably prudent man" standard to the facts in this case is erroneous.

The facts conclusively establish that from February through June of 1977, the plaintiff "broadened his search" both geographically and numerically. While it is true that the plaintiff continued to seek professional employment, he also sought any kind of human service work as time passed. He ultimately applied for unskilled labor positions. Applying a reasonableness standard to these facts and circumstances, we hold that the plaintiff's conduct clearly satisfies the work search requirement of RSA 282:3 C. To hold otherwise would not serve the public interest. Accordingly, the plaintiff should be awarded the disputed benefits.

In light of our holding, we need not reach the other issues raised by the plaintiff.

*Exceptions sustained.*

All concurred.