C. Herschel BRYANT, Appellant,

v.

LABOR AND INDUSTRIAL RELATIONS COMMISSION, Division of Employment Security, and Legal Aid of Western Missouri, Respondents.

No. WD 31156.

Missouri Court of Appeals, Western District.

Nov. 3, 1980.

Douglas J. Patterson, Kansas City, for appellant.

Rick V. Morris and Larry R. Ruhmann, Jefferson City, for Div. of Emp. Security.

Kevin M. Hare, Jefferson City, for Labor and Ind. Relations Comm. of Mo.

Before PRITCHARD, P. J., SWOFFORD, J., and HOUSER, Senior Judge.

HOUSER, Senior Judge.

C. Herschel Bryant, a lawyer, filed a claim for benefits under the Employment Security Law, Chapter 288, RSMo, 1969. A deputy of the division determined that he was (1) disqualified and (2) ineligible for benefits. An appeals referee conducted a hearing and affirmed the determinations of the deputy. On appeal from the Appeals Tribunal, the Labor and Industrial Commission denied Bryant's application for review of the Appeals Tribunal. Bryant filed a petition for judicial review in the Circuit Court of Clay County, which resulted in an affirmance of the decision of the Commission. From the order of the Circuit Court Bryant has appealed to this Court.

The findings of fact by the Commission are conclusive if supported by competent and substantial evidence. Section

288.210.[1] The Court may not substitute its judgment for that of the Commission, *Union–May–Stern Company v. Industrial Commission*, 273 S.W.2d 766, (Mo.App.1954) and may set aside a decision of the Commission only if the decision is contrary to the overwhelming weight of the evidence. *Meyer v. Industrial Commission*, 223 S.W.2d 835 (Mo.App.1949); *LaPlante v. Industrial Commission*, 367 S.W.2d 24 (Mo.App.1963). In determining its sufficiency the evidence must be considered in the light most favorable to the finding, together with all reasonable inferences which may be drawn therefrom in support of the finding. *LaPlante v. Industrial Commission, supra.* The Commission did not make new and separate findings of fact. It denied the application for review. As a result, the decision of the Appeals Tribunal is deemed to be the decision of the Commission. Sections 288.200 and 288.210.

There are two issues before the Court on this appeal: (1) whether claimant voluntarily left his employment without good cause attributable to his work or to his employer, in which event he would be disqualified from the benefits of the act, or whether he was terminated, discharged and fired from his position with his employer, in which case he would be entitled to unemployment benefits; (2) whether after separation from his employment claimant's activity in opening a full-time law office rendered him ineligible for those benefits.

### On the Issue of Disqualification

The Appeals Tribunal (and thereafter the Commission) found these to be the facts:

Claimant worked as managing attorney of the Platte County office of Legal Aid of Western Missouri. In April 1977 the director of the organization notified claimant by letter that it had been decided to close the Platte County office for lack of cases in that office. Claimant was offered a position as staff attorney at employer's Buchanan County office and a position as staff attorney in employer's Jackson County office. Both positions carried the same sala-ry, $15,154 per year, the same hours of work.

The job offer in Buchanan County was not suitable work because that employment would have required claimant to drive 104 miles roundtrip daily. The job at the Jackson County office would have required driving 14 miles roundtrip daily.

The job description of the position of staff attorney at employer's Jackson County office was that of an additional attorney "under Charlie Wilson. Our backlog is great and we hope by expanding the staff to meet the need for assistance in that regard in the Kansas City office."

Claimant declined this position, on the following grounds: the case load was too heavy; the type of cases handled by this unit (dissolution of marriage and other domestic relations cases) was unpleasant, and transfer to this job constituted a demotion and an insult. Claimant further testified that he did not get along with employer's director, whom he said "won't even speak to me if he can possibly avoid it," and with whom he had a personality conflict. Claimant testified his superior had harassed him since the fall of 1973 and that if he had taken the job offered there would have been harassment. (He did not explain in what way he had been harassed). He contended that because of his age, 56 years, "[t]hat type of case load eventually gets to you;" that the change would be a definite demotion in terms of subject matter and in terms of "heirarchy within the Legal Aid organization;" that no attorney had kept the job for a substantial period of time and the job was considered "rock bottom;" that he did not resign, but declined the position because he was hoping for a better offer, and that Legal Aid had better positions to offer him. (The latter was denied by his superiors).

Claimant's witnesses characterized dissolution cases as the most unpleasant work a lawyer has to do in the organization. They testified it is a demotion to be transferred from managing attorney to staff attorney,

1. All sections citations refer to Revised Statutes of Missouri 1969, V.A.M.S.

the type of demotion which would inspire one to leave the organization as quickly as possible; that specializing in domestic relations law creates to some extent a stigma or bad reputation for an attorney; that you are dealing with people's emotions and breakups of families, hysterical and neurotic housewives and battered and bruised children. One lawyer who had worked in that unit testified he would rather represent child molesters. Another branded domestic relations cases as "horrendous" and said he requested transfer from that unit because he felt he would "go nuts" if he "stayed around doing divorces."

Employer's deputy director disagreed with claimant's assessment of the proposed job in the domestic relations unit. He said claimant would have been working with two other attorneys in the unit and would not have been required to work any additional hours; that the pay was the same and the work and the responsibility were substantially the same as the work and responsibilities claimant had been experiencing at the Platte County office; that transfer to that job was not a demotion from the type of work he normally performed, since claimant had been working in a one–man office, supervising only a part–time secretary.

Claimant left his employment because the employer was closing down the Platte County office, and because he felt the two jobs offered him prior to his separation from work were not suitable. The Tribunal and Commission found that claimant did not meet the burden of showing that the job was so unpleasant as to be unsuitable, "especially in light of the fact that much of the work which claimant did in the employer's Platte County office involved Domestic Relations work. The jobs offered to the claimant involved the same hours of work and the same amount of pay and cannot reasonably be construed to be a danger to the claimant's health. Leaving work is for good cause attributable to the work or to the employer when, and only when, it is a result of circumstances of such a compelling nature as would cause a reasonably prudent person under the same circumstances to quit his job and become totally unemployed. It is found that under these circumstances it would have been more reasonable for the claimant to have accepted the job at the employer's Jackson County office rather than choose to become totally unemployed."

Accordingly, the Tribunal and Commission found that claimant left work voluntarily on November 25, 1977, without good cause attributable to his work or to his employer.

█ The foregoing findings of fact are supported by competent and substantial evidence on the whole record, and the Commission could reasonably have made its findings and reached its result on this issue. Good cause for voluntarily leaving employment under § 288.050 [2] " * * * is limited to instances where the unemployment is caused by external pressures so compelling that a reasonably prudent person would be justified in giving up employment." *Citizens Bank of Shelbyville v. Industrial Commission*, 428 S.W.2d 895, 899 (Mo.App.1968). The reasons assigned by claimant for declining the job offer in the Jackson County office were not reasons which would motivate the average 56–year–old lawyer with family responsibilities " * * * to terminate his * * * employment with its certain wage rewards in order to enter the ranks of the compensated unemployed * * *." *Belle State Bank v. Industrial Commission, et al.*, 547 S.W.2d 841, 846 (Mo.App.1977). Citizens Bank of Shelbyville held that there was not "good cause" where claimant's employer had stated before several co–employees that if mistakes claimant had made happened again "that's it" (implying that she would be discharged); where her superior acted cold toward her, was unfriendly

---

**2.** "1. Notwithstanding the other provisions of this law a claimant shall be disqualified for * * benefits until after he has earned wages equal to ten times his weekly benefit amount if the deputy finds

"(1) That he has left his work voluntarily without good cause attributable to his work or to his employer; * * *."

and as a result she could no longer work harmoniously with her superior.

*O'Donnell v. Labor and Industrial Relations Commission,* 564 S.W.2d 87 (Mo.App. 1978), is instructive. Claimant worked as a general kitchen worker. Later classified as a manager–trainee, she worked in various cafeterias. No positions being open she was assigned to her former general kitchen worker job in another location, at slightly increased compensation and shorter working hours. Claimant objected to the transfer and declined the job on grounds that she liked the position of manager–trainee; that to take the former position would be "detrimental to (her) image;" that she would be working with the same people she had worked with as a supervisor, and that after the change she would be working with them as a peer. The court said, 564 S.W.2d l.c. 88:

> "* * * plaintiff's subjective reasons for refusing re–assignment and quitting her job did not constitute 'good cause' and she was not entitled to unemployment compensation."

In defining "good cause" the Court in *Belle State Bank, supra,* 547 S.W.2d l.c. 846–847, said:

> "To constitute good cause, the circumstances motivating an employee to voluntarily terminate employment must be real, not imaginary, substantial not trifling, and reasonable not whimsical, and *good faith* is an essential element. The standard as to what constitutes good cause is the standard of reasonableness as applied to the average man or woman, and not to the supersensitive."

Claimant argues he did not resign and that Legal Aid did not consider that he had resigned; that Legal Aid did not comply with its own rules on resignation, which provide that all employees must submit a letter of resignation indicating the effective date and reason for resigning, and that

professional staff are required to give 30 days' notice of resignation. He urges that claimant did not indicate to Legal Aid that he was resigning (in his letter of November 4, 1977 claimant wrote "I have decided not to accept your offer"); Legal Aid did not consider his letter as a resignation, and Legal Aid did not require a 30–day notice, or request a reason for his so–called "resignation". From this claimant concludes that Legal Aid's failure to comply with its own rules requiring a 30–day waiting period to an effective resignation constitutes an admission that it terminated claimant rather than that claimant resigned. This does not follow. Without doubt Legal Aid considered that claimant had resigned. The director wrote claimant November 10, 1977, "I am in receipt of your letter of November 4, 1977, and I accept your resignation." That Legal Aid did not require claimant to observe the requirements of the 30–day rule is of no consequence, where the employee's position was abolished, and the employee declined proffered alternative employment. That rule was promulgated for the benefit of and as a protection for Legal Aid, which could, and under these circumstances did, waive strict adherence to the rule.

Claimant voluntarily left his employment without good cause attributable to his work or to his employer, and is therefore disqualified from unemployment benefits.

*On the Issue of Eligibility*

The Appeals Tribunal and Commission found that since filing his claim for unemployment compensation claimant has been engaged in the private practice of law. He testified: "At the end of my employment with Legal Aid I became a self employed practicing attorney. I spend my full time in my practice." From this the Tribunal and Commission concluded that claimant is self–employed, was not unemployed, and was not available for work, within the meaning of § 288.040.1(2);[3] that it is the

---

**3.** "1. A claimant who is unemployed and has been determined to be an insured worker shall be eligible for benefits for any week only if the deputy finds that

"(2) He is able to work and is available for work; provided, however, that no person shall be deemed available for work unless he has been and is actively and earnestly seeking work; * * *."

purpose of the Employment Security Law to provide for payment of benefits to persons unemployed through no fault of their own, and not to provide a supplemental income to self–employed individuals; that the claimant must, in fact, be available for work, and any individual who spends his full time in any endeavor entered in an attempt to produce income cannot be said to be unemployed.

Without question this finding of fact is supported by competent and substantial evidence, namely, claimant's own admission. The Commission not only reasonably could have made its findings and reached the result declaring claimant ineligible for benefits, but any other finding would have been overwhelmingly against the evidence.

■ To be eligible a claimant "must clearly possess a genuine attachment to the labor market and be able, willing and ready to accept suitable work." *Golden v. Industrial Commission*, 524 S.W.2d 34 (Mo.App. 1975). In Golden a full–time student, available for work only in the afternoons and evenings, was held to be not available for work ... not " * * * unconditionally, realistically and genuinely seeking attachment to the labor market." 524 S.W.2d l.c. 38.

In *Phillips v. Michigan Unemployment Compensation Commission*, 323 Mich. 188, 35 N.W.2d 237 (1948), an attorney who had a law office also worked in a manufacturing plant. Laid off at the plant because of lack of work, he continued to maintain his law office, where he spent from eight to twelve hours per day. He was denied unemployment compensation on the ground that he was not unemployed. The Michigan court said, 35 N.W.2d l.c. 239:

> "We believe the words 'unemployed individual' are used in § 28 in their ordinarily accepted sense and that, taken in that light, one who is engaged in rendering service for remuneration or who devotes his time to the practice of a profession by which a living is customarily earned cannot be said to be unemployed."

■ In the case before us Bryant was not unemployed and was not available for work, as required by § 288.040.1(2), because he was engaged in the full–time practice of law, devoting himself to the practice of a profession by which a living is customarily earned.

Claimant contends that he had no clients, no law business during various portions of the claimed period, and little income. The fact that claimant's law practice was not profitable and showed a net loss during some periods, did not render claimant unemployed. Thus, in *Aley v. Unemployment Compensation Board of Review*, 178 Pa.Super. 515, 116 A.2d 241 (1955), a claimant who was laid off work but who owned an appliance store, which he and his wife operated, was denied unemployment benefits, the court observing, 116 A.2d l.c. 242:

> " * * * The mere fact that his business may not have been profitable does not remove appellant from the category of a business–man and bring him within the class of workers the Act was designed to protect. As pointed out by President Judge Rhodes in *Muchant Unemployment Compensation Case*, 175 Pa.Super. 85, 103 A.2d 438, 440, the Statute 'was not designed to insure a weekly income to those engaged in business ventures who may not realize a profit therefrom during various weekly periods * * *.' "

In *Zeringue v. Administrator, Division of Employment Security of Department of Labor*, Ct.App.La., 136 So.2d 87 (1962), a claimant for unemployment compensation who sold life insurance an average of six to seven hours each day, and who was making only $1,500 a year gross from that effort, was held not unemployed or available for work and was ruled ineligible for unemployment compensation benefits. The court laid down this test: "whether the claimant engages in an activity sufficiently substantial in nature to constitute employment. * * But the mere fact that the activity engaged in is not profitable does not render the claimant unemployed." 136 So.2d l.c. 89.

■ Respondents cite, and we approve, the rule of the Supreme Court of Mississippi, laid down in *Mississippi Employment Security Commission v. Medlin*, 171 So.2d 496, 499 (1965), as follows:

"Unemployment benefits payable from funds derived from taxes paid by employers are designed basically to protect unemployed employees who are still attached to the labor market, but who lose their employment involuntarily through no fault of their own, not to insure the success of a person who voluntarily leaves his employment to go into self–employment * * *."

The judgment of the circuit court is affirmed.

All concur.