Department of Employment Security
No. 83-488

## APPEAL OF DIANNE ENO
### (New Hampshire Department of Employment Security)

June 19, 1985

*New Hampshire Legal Assistance,* of Claremont (*Shelley A. Simpson* and *Michael A. Fuerst* on the brief, and *Ms. Simpson* orally), for the plaintiff.

*Gregory H. Smith*, attorney general (*Daniel J. Mullen*, assistant attorney general, on the brief and orally), for the State.

SOUTER, J. The plaintiff appeals from an order of the appeal tribunal of the New Hampshire Department of Employment Security. The department's denial of unemployment benefits was sustained by the tribunal on the ground that the plaintiff had failed to "expose herself to the labor market to the extent commensurate with the economic conditions and the efforts of a reasonably prudent person seeking work." *See* RSA 282-A:31, I(c) (Supp. 1983). We reverse.

In February, 1982, the plaintiff was a student at Keene State College. Although one of her classes always met on Wednesday afternoons, her schedule was otherwise flexible enough to permit her to work as a clerical employee for the New England Telephone and Telegraph Company. On February 19, she was laid off, and on March 3 she applied for unemployment compensation benefits under RSA chapter 282-A, to begin with the week ending on March 6.

An employee of the department took the plaintiff's application, although she was not authorized to approve it. She advised the plaintiff to reapply for benefits each week pending a determination of her eligibility. On plaintiff's second visit she received a pamphlet entitled "Your Rights and Obligations." So far as it is relevant here, the pamphlet stated the conditions of eligibility in these paragraphs:

"5. You must be ready, willing, and able to accept and perform suitable work on all the shifts and during all the hours for which there is a market for the services you offer.

6. *You must be* available for and *seeking permanent full-time work for which you are qualified.*"

(Emphasis added.)

There was no further explanation of the requirement that an applicant be seeking work as a condition of eligibility. On this occasion, and on all of the plaintiff's subsequent visits to file weekly applications, an employee of the department simply asked the plaintiff if she was seeking work. Each time the plaintiff answered yes. There was never any further questioning or advice on the subject. Over the course of the ensuing eleven weeks the plaintiff answered some want ads by telephone calls and by sending out her resume, and the department gave her one lead. The plaintiff did not make personal visits to possible employers, however, and none of her efforts led to a job within the time in question here.

On March 12, 1982, a certifying officer determined that the plain-

tiff was ineligible for benefits because she was "a student in college, and therefore . . . not available for work" on all shifts and hours for which there was a market for her services. *See* RSA 282-A:31, I(c) and :44, I (Supp. 1983). The plaintiff appealed the denial to the department's appeal tribunal under RSA 282-A:48 and :53 (Supp. 1983) and continued to make weekly applications for benefits.

The appeal tribunal heard the matter on April 13, 1982. The hearing was brief, resulting in a transcript of five and one-half pages. Four of those pages record inquiries into the flexibility of the plaintiff's academic schedule and its compatibility with employment, the issue on which the department had denied benefits. The tribunal chairman also inquired, however, about the plaintiff's efforts to obtain work. *See Fournier v. State*, 121 N.H. 283, 428 A.2d 1238 (1981). She explained that at that point she had communicated with her former employer, had made two telephone calls, and had sent out two resumes in response to newspaper ads. The following colloquy ensued:

> "McAndrew: Is there any reason you don't go out and contact more employers in person, instead of just trying to pick up on the telephone and resumes?
>
> Eno: Well, it's just that there . . . every place I go or people that I talk to there are no jobs.
>
> McAndrew: Well, do you talk to the employers? That's the ones that have the jobs, not the people that you know sometime. They may even tell you a place to go."

On April 15, 1982, the appeal tribunal issued a decision, on a divided vote, affirming the disqualification. It found that the "claimant, since filing her claim for unemployment compensation benefits, has sent out one resume and made two telephone calls . . . . [She] is a full time student and is not actively seeking work." The tribunal accordingly disqualified the plaintiff "from March 3, 1982 through April 13, 1982 and until she shows that . . . she has exposed herself to employment to the extent commensurate to the economic conditions and the efforts of a reasonably prudent person seeking work."

From this point the procedural history of the case becomes a snarl. The case went to the appellate division, *see* RSA 282-A:62 and :64 (Supp. 1983), returned to the appeal tribunal, was reopened by the commissioner of the department, *see* RSA 282-A:60 (Supp. 1983), went to the appeal tribunal a third time and thence to the appellate division a second time. After its second hearing, the appeal tribunal found that the demands of plaintiff's student status did not render her ineligible, but after its third hearing the tribunal again found

her ineligible based on student status. The appellate division reversed that last determination, however, and the significance of her student status is therefore not directly in issue before us.

In the meantime, the department had found the plaintiff eligible for benefits starting with the week ending May 8, 1982, a date coinciding with the end of the plaintiff's spring semester classes. Thus we are left with the question whether the appeal tribunal properly sustained the denial of benefits for nine weeks on the ground that the plaintiff had made insufficient efforts to obtain work during that time.

■■ In considering this question on appeal we have no authority to substitute our judgment for that of the appeal tribunal as to the weight of evidence bearing on issues of fact. RSA 282-A:67, IV (Supp. 1983). Rather, we have authority to reverse the order on appeal only if we find that substantial rights of the plaintiff have been prejudiced as a result of legal or constitutional error. *Id.*

The plaintiff has claimed substantial prejudice from errors of law and a denial of due process. Reduced to its essentials, her claim of legal error is that the department had affirmative obligations to advise her of the standards for judging the adequacy of efforts to find work and to advise her of any deficiency in her efforts as judged by those standards. The plaintiff points to no section of the statute with such express provisions, and her position is therefore that we should find such obligations implicit in the statute.

Whatever may be the merits of this position, we believe that the record before us raises a narrower, and more obviously dispositive issue: whether the department may deny benefits to the plaintiff on the ground that she made insufficient efforts to find work, over a period of time in which the department led her to believe that her efforts were sufficient. This issue is at the nub of her claim that the denial of benefits offends standards of due process, to which we turn.

■■ The plaintiff's claim of entitlement to unemployment compensation benefits is a claim to a property interest that is itself subject to protection under the due process guarantees of part I, article 15 of the Constitution of New Hampshire. *See Royer v. State Dep't of Empl. Security*, 118 N.H. 673, 677, 394 A.2d 828, 830 (1978). At its most basic level, the requirement to afford due process forbids the government from denying or thwarting claims of statutory entitlement by a procedure that is fundamentally unfair. *See City of Claremont v. Truell*, 126 N.H. 30, 36, 489 A.2d 581, 586 (1985). We agree with the plaintiff that the department's action suffers from such a degree of unfairness.

At the outset we should say that if we were to consider the plaintiff's efforts to find work simply in the light of the statutory standard of eligibility, we would find no error in the denial of benefits. RSA 282-A:31, I(c) (Supp. 1983) requires that an applicant have "exposed himself to employment to the extent commensurate with the economic conditions and the efforts of a reasonably prudent man seeking work." The department classified the plaintiff as a general clerk or salesperson. Therefore the test of reasonable effort on her part would have been whether she had done what a reasonable general clerk or salesperson would have done to obtain a job. *See Philbrook v. Adams*, 119 N.H. 298, 301, 401 A.2d 1070, 1073 (1979). It could be found that a clerk or salesperson is at a level of employment where making telephone calls and sending resumes are not normally appropriate methods of seeking work. *See id.* The appeal tribunal could have found that personal visits to possible employers were reasonably necessary, visits that the plaintiff had failed to make.

As we read the several orders of the appeal tribunal, it appears that the tribunal considered the foregoing facts as we have just done, in isolation. But to do this is to view the case with blinders, and on the issue of due process we must look further at the department's contacts with the plaintiff.

As instructed, the plaintiff made weekly visits to the department's local office. *See* RSA 282-A:31, I (Supp. 1983). Each time she was asked the general question whether she was seeking work, and each time she answered yes. Her answers were not false, for the questions were not such as to elicit any detail about the extent of an applicant's search.

Since the statute calls for eligibility determinations on a week-to-week basis, *id.*, the reason for asking questions is to determine whether the applicant has satisfied the conditions of eligibility for that week. When an applicant's answers are accepted without further question or inquiry, the natural impression is that the answers satisfy the eligibility conditions to which they relate. Such an impression has particular force when the condition in question, the need to be seeking work, is stated to the applicant in only the most general of terms.

The impression thus created does more, however, than merely comfort an applicant in the hope that the condition has been satisfied thus far. For the condition that an applicant be seeking work does not refer only to some past event that is over and done with when the applicant files an application; it is a condition that the applicant must continue to meet. The department's response to the applicant's answer relating to this condition is therefore a signal

about what the applicant is expected to do in a continuing effort to satisfy the condition. If an applicant is told that his efforts to find work have been insufficient, he can make greater effort in the following week. If he is given the impression that he has satisfied the condition thus far, he can reasonably infer that the same level of effort will do for the future.

██ We believe that the record in this case can reasonably be read only as supporting just such an inference. In effect, the department led the plaintiff to believe that she need not do more to establish her eligibility than she had done. She acted accordingly, only to have the appeal tribunal deny her benefits for failing to do more. This was fundamentally unfair and thus amounted to a denial of due process.

It may be argued, however, that the initially misleading impression was corrected by the appeal tribunal's decision of April 15, 1982. At the hearing on April 13, one member of the tribunal asked why the plaintiff did not personally visit employers. In the written order of April 15 the tribunal stated in part that the plaintiff was not actively seeking work and would remain ineligible until she had "exposed herself to employment to the extent commensurate to the economic conditions and the efforts of a reasonably prudent person seeking work."

██ That language in isolation would have put the plaintiff on notice that more effort was called for. But the language was not so isolated. It was sandwiched in with other statements referring to her student status and could be read as stating a consequence of that status, not as a separate and independent ground for disqualification. The plaintiff was *pro se* when this order was issued, and we cannot hold *pro se* applicants for unemployment compensation to a high level of analytical sophistication. The tribunal's reference to the insufficiency of plaintiff's efforts was, therefore, not a clear statement of a material finding, as required by RSA 282-A:58 (Supp. 1983), and not adequate to correct the misleading impression that continued to be given in the course of the weekly visits to the local office. This inadequacy is underscored by the fact that it was not until after the period of time in question here that the department sought any specific or written report of the plaintiff's efforts to get a job.

Before concluding this opinion it is only fair to note that the record indicates that during the time in question the department was both understaffed and confronted with a large number of applications. These conditions may well explain why the plaintiff did not receive more specific attention when she made her weekly appear-

ances to apply for benefits. We also note that since the time in question the department has revised the pamphlet of instructions for applicants, which now indicates that personal visits to possible employers are normally appropriate. The facts before us are therefore unlikely to recur.

Having found that the department's denial of benefits for the weeks in question worked a denial of due process, we reverse the decision of the appeal tribunal and remand the case for entry of an order finding the plaintiff eligible for benefits during the disputed period.

*Reversed and remanded.*

All concurred.