Department of Employment Security
No. 91-544

APPEAL OF ARTHUR H. DUROCHER & a.

(New Hampshire Department of Employment Security)

July 19, 1993

*Arthur H. Durocher*, by brief and orally, *pro se.*

*William F. Bertholdt*, by brief, *pro se.*

*John P. Arnold*, attorney general (*Daniel J. Mullen*, assistant attorney general, on the brief and orally), for the State.

HORTON, J. The *pro se* claimants, Arthur H. Durocher and William F. Bertholdt, appeal from decisions of two appeal tribunals of the department of employment security (DES), denying them unemployment compensation because they had substantially removed themselves from the labor market and because they were not unemployed individuals as defined by RSA 282-A:14 (1987 & Supp. 1992). We reverse and remand.

The claimants, employees of Sanders Associates, Inc., were laid off in August 1990 due to lack of work. In September of the same year, the claimants and another former employee of Sanders Associates formed a corporation known as Total Quality Manpower, Inc. to provide quality assurance engineering services. In addition, they created the corporation to provide themselves with a professional office from which to execute their job search. It provided the economies of scale for office expenses such as telephone services and a

means for networking among businesses and for contacts in their field.

The claimants each made a $2,500 initial investment in the corporation. They subsequently supplemented their interests until each totaled $4,500. They used the invested money to acquire an office, furniture, subscriptions, a computer, and part-time office support staff. Each principal owned eighty of three hundred corporate shares, with the corporation retaining sixty shares. During the benefits period the corporation had no clients, contracts or income.

Besides their corporate activities, the claimants actively engaged in searching for individual employment. Although both claimants spent business days at the corporate offices, they mixed corporate and job search activities. Durocher spent roughly forty hours per week at the office, with fifteen to twenty hours dedicated to his search for employment. Bertholdt spent thirty or more hours in the office per week, roughly half spent searching for employment.

The claimants had two methods for contacting employers. The first was the time-honored method of contacting the employer directly, either by phone or by resume. The second approach was to contact a company under their corporate guise. If the company lacked an interest in contracting with the corporation, then the claimants used the contact as an opportunity to introduce themselves as job applicants. The record fails to show what percentage of employers the claimants contacted under each method. Durocher gave no oral testimony on the number of employers he had contacted individually, but the record shows that in the period from December 3, 1990, to January 21, 1991, he contacted at least thirty-seven employers. Bertholdt testified that on average he contacted one employer per day. The claimants' contacts included employers from around the United States and Canada. Both claimants assured the DES, both orally and in writing, that they would take any job in quality assurance engineering in any reasonable location.

In late November and early December 1990, the claimants applied for unemployment compensation, Durocher in Nashua and Bertholdt in Laconia. The certifying officers found them ineligible because they were self-employed, and, thus, not unemployed within the meaning of the unemployment statutes. Each claimant appealed to a DES appeal tribunal. The respective tribunals found each claimant had become a self-employed entrepreneur and had substantially removed himself from the labor market. As such, the tribunals found that the claimants were not unemployed as defined by RSA 282-A:14, I (1987) and that they were ineligible for benefits under RSA 282-A:31, I(c) and (d) (1987).

The claimants subsequently requested that the commissioner reopen their cases, but their requests were denied. They next appealed to the DES appellate board, which held a joint hearing on June 14, 1991. The appellate board affirmed the two tribunal decisions. The claimants moved for reconsideration, were denied, and then appealed to this court.

On appeal the DES argues that the claimants fail to meet the threshold requirement of unemployment, making them ineligible for unemployment compensation benefits. The DES also argues that even if the claimants were unemployed, they substantially removed themselves from the labor market and, therefore, are ineligible for benefits. The *pro se* claimants, in a refreshingly short two paragraph argument, contend they were unemployed under the unemployment compensation statutes. They also contend that they have continuously been "ready, willing, and able to take full time employment" and were, therefore, attached to the labor market.

When reviewing decisions of the DES "we will not substitute our judgment for that of the DES regarding the weight of the evidence on questions of fact." *Appeal of Work-A-Day of Nashua*, 132 N.H. 289, 291, 564 A.2d 445, 447 (1989). "We will, however, reverse the appeal tribunal where its conclusions are affected by an error of law or are clearly erroneous." *Appeal of Swift*, 134 N.H. 177, 179, 589 A.2d 590, 592 (1991).

We start our analysis with the issue of the claimants' unemployment status. A person entitled to receive unemployment compensation benefits must be "unemployed." RSA 282-A:31, I (1987). RSA 282-A:14 provides the definitions for unemployment, both partial and total. We hold that during the claim period the claimants were not totally unemployed as defined by RSA 282-A:14, I. It states that "[a]n individual shall be deemed 'totally unemployed' in any week with respect to which no wages are payable to him and during which he performs no services." The claimants concede that they were performing services for their corporation during the claim period. By so doing they were not totally unemployed.

The claimants, however, contend that RSA 282-A:9, IV(n) (1987 & Supp. 1992) provides an applicable exception, stating that the term "employment" shall not include "[s]ervice performed on behalf of or for a corporation or association by an officer or director thereof, for which service no wages . . . are paid or payable to such officer or director or any person, organization or association." The claimants contend that they are providing service to a corporation and neither they nor the corporation have received any income. RSA 282-A:9

provides the definition of "employment" that is used for purposes of determining the contributions to, and the charges against, employer accounts. It does not define "unemployment," which is used for purposes of determining claimant benefits. The RSA 282-A:9 definition of employment is used in the fund management provisions of RSA 282-A:69–:98 (1987 & Supp. 1992). The only time RSA 282-A:9 plays an express role in determining claimant benefits is under RSA 282-A:32, I (1987 & Supp. 1992), where the nature of a claimant's employment is used to determine when a claimant, previously disqualified for benefits, becomes requalified.

The claimants cite *Roukey v. Riley*, 96 N.H. 351, 77 A.2d 30 (1950), for the proposition that this court has applied RSA 282-A:9 to the definition of unemployment. The proposition, however, is incorrect because *Roukey* did not address the definition of unemployment. In *Roukey*, this court analyzed Revised Laws, chapter 218, section 3, the precursor to the statute setting forth benefits eligibility conditions, *see* RSA 282-A:31, which is unrelated to RSA 282-A:9. *See Roukey*, 96 N.H. at 352, 77 A.2d at 31. *Roukey* provides no help to the claimants.

■■ The claimants' unemployment status properly falls under RSA 282-A:14, II (1987), which states that "[a]n individual shall be deemed to be 'partially unemployed' in any week of less than full-time work if the wages computed to the nearest dollar payable to him with respect to such week fail to equal his weekly benefit amount." The intent of this provision is "to establish a minimum weekly earning level for an employee and to provide benefits if because of [involuntary] partial unemployment [the employee's] wages drop below that minimum." *Armstrong v. Adams*, 113 N.H. 367, 369, 308 A.2d 842, 843 (1973). In the instant case, the claimants involuntarily left Sanders Associates. They engaged in less than full-time work because they provided services to their corporation for roughly 20 hours per week. Neither they, nor their corporation, received any wages, made any contracts, or received anything of value that could be considered wages. *See* RSA 282-A:15, I (1987). Consequently, their wages failed to equal their weekly benefit amount, and they qualified as partially unemployed.

The appeal tribunals determined that the claimants engaged in their corporate activities full-time and were ineligible for benefits under RSA 282-A:14, II. The tribunals found, and the DES maintains, that Bertholdt and Durocher spent 30 and 40 hours per week, respectively, working for the corporation. A thorough review of the record reveals no basis for this finding. The hourly figures cited by

the DES are the hours the claimants spent in their office, not the hours they spent working for the corporation. The claimants expressly stated that they divided their activities at the office between their corporate and job search responsibilities. Bertholdt estimated that he spent roughly half his office time seeking employment, and Durocher stated that he spent 15-20 hours at the office doing the same. The record shows that the appeal tribunals failed to subtract the job search hours from the office hours in calculating the claimants' self-employed work time. We find the appeal tribunals' findings clearly erroneous and hold that the claimants were partially unemployed.

The DES argues that finding the claimants partially unemployed will saddle the DES with unmanageable administrative problems. The DES contends that providing benefits to self-employed individuals will allow such claimants to manipulate their wages to extend their unemployment compensation benefits. We disagree with the DES's assessment. RSA 282-A:15, I, defines wages to include "every form of remuneration for personal services paid or payable to a person directly or indirectly." Payments made or due to an individual's business could be found to be indirect payments to the individual for purposes of unemployment compensation eligibility. The DES, therefore, would be in the position to deny a claimant benefits even if such a claimant had not taken a salary from a company with sufficient income to warrant payment of wages.

We next consider the appeal tribunals' findings that the claimants substantially removed themselves from the labor market. We hold that the tribunals' findings were clearly erroneous. The claimants were available for and seeking permanent, full-time work for which they were qualified, and they were ready, willing, and able to accept and perform suitable work.

The DES denied the claimants benefits pursuant to RSA 282-A:31, I(c) and (d) because it found they had substantially removed themselves from the labor market. RSA 282-A:31, I(c) states that in order for an unemployed individual to be eligible for benefits the individual must be

> "ready, willing and able to accept and perform suitable work on all the shifts and during all the hours for which there is a market for the services he offers and that he has exposed himself to employment to the extent commensurate with the economic conditions and the efforts of a reasonably prudent man seeking work."

In addition, RSA 282-A:31, I(d) states that a claimant must be "available for and seeking permanent, full-time work for which he is qualified." These criteria are directed at determining the claimant's commitment to the labor market, that is, to finding full-time employment. The DES, however, based its decision upon the claimants' activities as entrepreneurs. That the claimants started a business did not, by itself, make them ineligible for benefits. Their business activities were relevant only to the extent that their activities removed them from the labor market or provided them income in excess of their weekly benefits. We have stated:

> "The availability requirement is said to be satisfied when an individual is willing, able and ready to accept suitable work which he does not have good cause to refuse . . . . [T]he purpose of the availability requirement is to test the claimant's attachment to the labor market. It is to determine if he is unemployed because of lack of suitable job opportunities or for some other reason such as physical incapacity or unwillingness to work."

*Roukey*, 96 N.H. at 352, 77 A.2d at 31. We have framed the "purpose of the requirement that a claimant seek permanent full-time work in order to be eligible for benefits [as a] test [of] whether the claimant is available for work and is genuinely attached to the labor market." *Appeal of Longhi*, 127 N.H. 570, 571, 503 A.2d 833, 834 (1986) (quotation omitted). "[I]f the claimant is ready to accept suitable work which he does not have good cause to refuse, he is considered attached to the labor market and available." *Philbrook v. Adams*, 119 N.H. 298, 301, 401 A.2d 1070, 1072 (1979) (quotation omitted).

The DES cites numerous cases from other jurisdictions for the proposition that the claimants were not entitled to unemployment benefits solely because of their entrepreneurial activities. Many of the cases cited, however, involve situations where the claimant made no effort to find individual full-time employment, focusing instead on his or her entrepreneurial venture. In *Bryant v. Labor & Indus. Relations Com'n.* 608 S.W.2d 524, 528–29 (Mo. Ct. App. 1980), a legal aid lawyer was laid-off and pursued private law practice full time, making no effort to find employment in the labor market. *Zeringue v. Administrator, Div. of Emp. Sec. of D. of L.*, 136 So. 2d 87, 88 (La. Ct. App. 1962), involved an oil company planning clerk, who, after being laid off, attempted to sell life insurance. The court found that the claimant spent six to seven hours per day selling insurance and had sought employment only a "'couple of times.'" *Id.* It held that the claimant was not available for employment. *Id.* at 89.

In other cases cited by the DES, the New York and Pennsylvania courts denied benefits to claimants solely because the claimants were self-employed. In New York, however, eligibility for unemployment compensation benefits requires the claimant to be *totally* unemployed, *see* N.Y. LAB. LAW § 591 (McKinney 1988), and Pennsylvania has a specific benefits exclusion for self-employed individuals, *see* PA. STAT. ANN. tit. 43, § 802(h) (1991). These cases are inapposite to the instant case because the statutory schemes in New York and Pennsylvania do not provide benefits to partially unemployed individuals.

We find no support in the record for the DES's determination that the claimants removed themselves from the labor market. The claimants stated in unequivocal terms that they were ready, willing, and able to accept work in the field of quality assurance engineering. Both stated they would accept full-time employment in any reasonable geographic location and had sought jobs as far west as California and north into Canada. Both claimants were available and actively seeking full-time employment. Each claimant worked at least 15 hours per week searching for individual employment and on average had made resume or phone contact with at least one employer every two days during the claim period.

In addition, the claimants used their corporate activities, in part, to further their individual job searches. In situations where they approached a company in their corporate guise and the company showed no interest in contracting with the corporation, the claimants used the business contact to introduce themselves as candidates for employment. The claimants' corporate offices, like an out-placement facility, provided a professional address at which they could be contacted.

 In summary, we hold that the claimants are entitled to partial benefits pursuant to RSA 282-A:14, II. There is no support in the record for the DES finding that the claimants were self-employed full-time or that they had substantially removed themselves from the labor market. The DES ruling, therefore, is reversed, and we remand to the appeal tribunals for determination of benefits.

*Reversed and remanded.*

All concurred.