Department of Employment Security
No. 94-631

APPEAL OF LEIGH H. WILLIAMSON

(New Hampshire Department of Employment Security)

February 12, 1996

*New Hampshire Legal Assistance*, of Claremont (*Jonathan P. Baird* on the brief and orally), for the plaintiff.

*Jeffrey R. Howard*, attorney general (*Daniel J. Mullen*, senior assistant attorney general, on the brief, and *William C. McCallum*, assistant attorney general, orally), for the State.

HORTON, J. Pursuant to RSA 282-A:67 (Supp. 1995), the claimant, Leigh H. Williamson, appeals the final decision of the New Hampshire Department of Employment Security denying him unemploy-

ment compensation benefits because the appeal tribunal held that he was not available for work. We reverse and remand.

In September 1993, the claimant was appointed to fill the unexpired term of a Goshen town selectman who had resigned. He was then elected in March 1994 to a three-year term as selectman. This position required the claimant to attend meetings on Monday evenings from 7:30 to 11:00. He was also selectman representative on the Goshen Planning Board, which met Tuesdays from 7:00 p.m. to 8:30 p.m. From January to November 1993, the claimant worked nights as a crew chief for Ambrozy, Inc. cleaning floors at the Goffstown Shop 'N Save. He was able to accommodate his selectman duties because his job with Ambrozy did not require him to work on Monday evenings. After Ambrozy lost the contract with Shop 'N Save, the claimant was laid off. He filed for unemployment compensation in November 1993, informing the certifying officer of his position as a selectman. The officer determined that the claimant was eligible for benefits.

■ On January 26, 1994, the claimant received a referral for a job interview with Homestead Industries. At the interview he expressed his preference for first-shift work but was told the openings were for second (3:00 p.m. to 11:00 p.m.) and third (11:00 p.m. to 7:00 a.m.) shifts. He informed the interviewer that a second shift job would interfere with his selectman duties and that he might occasionally be late for third shift on Mondays because the selectman meetings sometimes ran late. He was not considered for either shift because the job required standard hours. The certifying officer determined that he was ineligible for further unemployment benefits because of the restrictions imposed by his selectman duties. The claimant appealed to the appeal tribunal, which, after a hearing, determined that the claimant had been employed in an occupation requiring shift availability. The tribunal concluded that because of his position as a selectman, the claimant was unable to work second shift and placed limits on his ability to work third shift, thereby severely limiting his ability to work all hours and all shifts as required by RSA 282-A:31, I(c) (1987). The claimant sought review of this decision from the appellate board, which affirmed the appeal tribunal and denied his motion for reconsideration. This appeal followed.

> When reviewing decisions of the DES we will not substitute our judgment for that of the DES regarding the weight of the evidence on questions of fact. We will, however, reverse the appeal tribunal where its conclusions are affected by an error of law or are clearly erroneous.

*Appeal of Durocher*, 137 N.H. 437, 440, 629 A.2d 94, 96 (1993) (quotations omitted). We conclude that the appeal tribunal erred as a matter of law.

■ In order for a claimant to be eligible for benefits, the commissioner must find that the claimant is

> ready, willing and able to accept and perform suitable work on all the shifts and during all the hours for which there is a market for the services he offers and that he has exposed himself to employment to the extent commensurate with the economic conditions and the efforts of a reasonably prudent man seeking work.

RSA 282-A:31, I(c). "It is well established that to be 'ready, willing and able' to accept suitable work does not demand total availability." *Philbrook v. Adams*, 119 N.H. 298, 301, 401 A.2d 1070, 1072 (1979). "The purpose of the requirement is to test the claimant's attachment to the job market, a determination which is made by reference to the facts and reasonable circumstances of each case." *St. Germain v. Adams*, 117 N.H. 659, 662, 377 A.2d 620, 623 (1977). We have recognized a number of situations in which the claimant was eligible for benefits despite the fact that the claimant was not available twenty-four hours per day. *See Appeal of Beckman*, 131 N.H. 315, 318, 553 A.2d 288, 290 (1988) (claimant available despite lack of transportation to particular job); *Springer v. Dep't of Empl. Sec.*, 120 N.H. 520, 523, 418 A.2d 1277, 1279 (1980) (picketing four hours per week did not raise presumption that claimants were unavailable); *St. Germain*, 117 N.H. at 662, 377 A.2d at 623 (waitress unable to work every Sunday considered available).

■■ Implicit in our earlier decisions is the consideration that the claimant have a valid excuse for restricting his ability to work all shifts and all hours. One such limitation on the claimant's ability to work all shifts and all hours may be the inability to accept a specific job due to a unique job requirement. *Cf. Beckman*, 131 N.H. at 318, 553 A.2d at 290. A justifiable personal restriction may also be a qualifying limitation. *Cf. St. Germain*, 117 N.H. at 662, 377 A.2d at 622-23. Additionally, a claimant may be able to restrict his ability to work all shifts and all hours if the limitation is supported by public policy. *Cf. Roukey v. Riley*, 96 N.H. 351, 352, 77 A.2d 30, 32 (1950) (applying prior law). On the other hand, if the reason for the claimant's inability to work all hours and all shifts simply reflects the claimant's unwillingness to work, the claimant is unavailable, and hence not eligible for benefits. *See Beckman*, 131 N.H. at 318, 553 A.2d at 290.

■ Establishing a qualifying limitation, however, is not suffi-cient for the claimant to be eligible for benefits if the restriction on the hours that the claimant can work does not leave the claimant substantially available to work all hours and all shifts. *See Huntley v. Dept. of Employment Sec.*, 397 A.2d 902, 907 (R.I. 1979) (noting that both the degree of and the reason for the restriction should be considered when determining availability). In *Goings v. Riley*, 98 N.H. 93, 95 A.2d 137 (1953) (applying prior law), for example, the claimant refused to work second and third shifts because she needed to care for her paralyzed mother. Although family obligations may be a qualifying limitation, because the limitations on the hours she was willing to work were so great, there was no reasonable possibility that the claimant would find suitable work. Therefore, she was considered unavailable within the meaning of the statute. *Id.* at 95, 95 A.2d at 139.

■■ The New Hampshire unemployment compensation statute is different from statutes in other States. Many other statutes require only that the claimant be "available for work." *E.g.*, Mass. Gen. L. ch. 151A, § 24(b) (1996) (claimant must be "available and actively seeking work"); R.I. Gen. Laws § 28-44-12 (1986); Vt. Stat. Ann. tit. 21, § 1343(a)(3) (1987); *cf.* 81 C.J.S. *Social Security and Public Welfare* § 259 (1977) (explaining the concept "available for work"). Prior to 1955, New Hampshire also only required that the claimant be "able to work, and available for work." Laws 1937, 178:3. In 1955, the legislature added the requirement that the claimant be available for work "on all the shifts and during all the hours for which there is a market for the services he offers." Laws 1973, 446:1 (amending Laws 1955, 141:8). While, as we noted before, this does not require total availability, it does require that the claimant demonstrate a greater attachment to the job market than in those States without this restriction. *E.g.*, *Shufelt v. Dept. of Employment*, 531 A.2d 894, 898 (Vt. 1987) (holding that when the claimant's restrictions substantially impair her attachment to the job market she is no longer eligible for benefits). Because the facts and circumstances of each case are important considerations, we cannot establish a single test for determining when the claimant's limita-tions cause him or her no longer to be attached to the job market. *See Roukey*, 96 N.H. at 352, 77 A.2d at 31. Depending on the type of work that is suitable for the claimant, some job markets may offer greater flexibility in scheduling than others. So long as the claimant, however, has established a qualifying limitation and is available to work substantially all hours and all shifts, the claimant is available within the meaning of the statute.

■■ We do not read the appeal tribunal's decision as applying the test we adopt today. It is not clear if the tribunal considered whether the claimant's selectman duties were a qualifying limitation for restricting the hours of his availability. Moreover, the decision states: "Benefits are disallowed . . . until the claimant is *fully available for work without restriction.*" (Emphasis added.) This appears to apply a total availability standard rejected by our decisions. *See Springer*, 120 N.H. at 523, 418 A.2d at 1279. Accordingly, we reverse and remand. On remand, the appeal tribunal shall determine, first, whether the claimant has established a qualifying limitation for the restrictions he imposes on his working hours. If he is unable to establish that the limitation qualifies him to restrict his availability to work all hours and all shifts, then he is not available. If, on the other hand, he succeeds in passing this threshold, he must establish that he can work substantially all hours and all shifts for which there is a market for his services.

*Reversed and remanded.*

All concurred.