Thomas KIMBLE, Appellant,

v.

**DIVISION OF EMPLOYMENT SECURITY, Respondent.**

**No. WD 75161.**

Missouri Court of Appeals, Western District.

Jan. 8, 2013.

Samuel I. McHenry, Kansas City, MO, for appellant.

Michael E. Cook Pritchett, Jefferson City, MO, for respondent.

Before Division Three: ALOK AHUJA, Presiding Judge, VICTOR C. HOWARD, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

Thomas Kimble ("Kimble") appeals from the decision of the Labor and Industrial Relations Commission ("the Commission") which found that Kimble voluntarily left his employment without good cause and was therefore disqualified for unemployment benefits when he refused an offered replacement position upon the elimination of his existing position. We affirm.

## Factual and Procedural History[1]

Kimble began working for automobile dealership, Dick Smith Ford, Inc., ("Employer") in 1974, in the service department. From 1986 to 1990, Kimble worked as a salesperson, where Employer characterized his performance as "middle of the pack." From 1990 through the end of his employment in October 2011, Kimble was employed as Employer's IT Manager. In his role as IT Manager, Kimble maintained Employer's website, worked with Employer's internet vendors, and assisted other employees with internet and computer difficulties.

In October 2011, Employer informed Kimble that the IT Manager position was being eliminated. Kimble's former duties were to be absorbed in part into another position, and outsourced in part. Employer offered Kimble continued employment with Employer as a salesperson ("Offer"). As the IT manager, Kimble's salary was $1,000 per week plus the use of an Employer-paid vehicle. In contrast, the sales position generally paid $500 per week draw, plus commission, and a $300 monthly car allowance. Employer testified that an average salesperson generally made around $50,000 a year excluding the car allowance.

Employer gave Kimble a week to consider the Offer, and continued to pay Kim-

---

1. The facts in this case are not in material dispute.

ble during that week.[2] At some point during that week, without any further inquiry or negotiation regarding the sales position's salary, car allowance, or commission structure, Kimble notified Employer that he was rejecting the Offer. Kimble informed Employer that he instead intended to pursue the expansion of his part-time photography business. Kimble signed a document on Employer's letterhead entitled "Voluntary Resignation" in which Kimble agreed to the statement "I hereby voluntarily resign my position at Dick Smith Ford, Inc."

Kimble filed a claim for unemployment benefits. Employer filed a protest stating that Kimble resigned after informing Employer that he was starting his own photography business. A deputy of the Division of Employment Security ("Division") determined ("Deputy's Determination") that Kimble was not disqualified from receiving benefits because his separation was not for misconduct connected with work but "for reasons attributable to a lack of work" as his position as IT Manager had been eliminated. Employer appealed the Deputy's Determination to the Appeals Tribunal.

The Appeals Tribunal conducted a hearing. Kimble testified that: (1) he did not inquire of Employer how much he would be paid in the sales position, how much he would receive for the car allowance, or how his commission would be structured; (2) he decided he did not want the sales position because the sales industry was down, there was no way to know how much money he would earn, and he did not have a vehicle and could not obtain a vehicle for $300 per month; (3) he felt that if Employer wanted him to stay, Employer would

have worked something out with Kimble like allowing him to use a company car for thirty days; and (4) the only reason he did not accept the Offer was because, "I just felt [Employer] didn't want me at the dealership any longer … I didn't feel like there was a bona fide offer to work the sales floor."

The Appeals Tribunal reversed the Deputy's Determination and found that Kimble was disqualified for benefits. The Appeals Tribunal found that Kimble could have continued working as a salesman for Employer but instead left his employment voluntarily without even attempting to perform the offered position. The Appeals Tribunal found that whether Kimble would have experienced a loss in income was speculative as there was no way of knowing what commissions Kimble might have earned; that Kimble's assertion that he could not obtain a source of transportation for the $300 monthly car allowance was incredible; and that Kimble's assertion that the Employer no longer wished for him to perform services for it was not supported by the evidence. The Appeals Tribunal acknowledged that a substantial reduction in wages can be regarded as "good cause" for leaving employment voluntarily, but that Kimble had no way of knowing what his income would have been had he accepted the Employer's Offer. Further, the Appeals Tribunal held that the offered car allowance would have been sufficient to obtain a source of transportation, and that Kimble's assertion that he quit his job in part because he had no transportation did not constitute good cause attributable to the work or his Employer. Kimble appealed to the Commission.

---

2. Kimble testified that during this week he was actually assisting Employer in the transition of his IT Manager duties. Whether Kimble worked in some fashion during the week is of no import. What is material is that Employer gave Kimble a full week to consider the Offer.

In affirming the decision of the Appeals Tribunal by a two to one majority, the Commission adopted the findings of the Appeals Tribunal but made additional findings and comments in a supplemental decision. The Commission noted that while any reasonable worker would have doubts about continuing to work for an employer faced with such a drastic change in the nature of the work he was expected to perform, Kimble nonetheless failed to exercise good faith in quitting his employment. The Commission held that good faith is an element of good cause, requiring Kimble to demonstrate that an attempt was made to resolve any issues he might have had with the Offer before he took the drastic step of refusing the Offer, and thus quitting his employment. The Commission concluded, "Because [Kimble] took no steps to salvage the employment relationship once his supervisor told him of the change of his duties, we conclude [Kimble] failed to exercise good faith."

Kimble appeals.

## Standard of Review

Appellate review of a decision made by the Commission is governed by section 288.210.[3] *Valdez v. MVM Sec., Inc.,* 349 S.W.3d 450, 454 (Mo.App. W.D.2011). "We may not reverse, remand, or set aside the Commission's decision unless the Commission acted without or in excess of its powers, the decision was procured by fraud, the decision was not supported by the facts, or the decision was not supported by sufficient competent evidence in the whole record to warrant the making of or the denial of the award." *Weirich v. Div. of Emp't Sec.,* 301 S.W.3d 571, 574 (Mo.App. W.D.2009) (citing section 288.210; *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 223 (Mo. banc 2003)).

**3.** All statutory references are to RSMo 2000

■ "An appellate court 'must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, *i.e.,* whether the award is contrary to the overwhelming weight of the evidence.'" *Harris v. Div. of Emp't Sec.,* 350 S.W.3d 35, 39 (Mo.App. W.D.2011) (quoting *Hampton,* 121 S.W.3d at 222–23). "In reviewing the Commission's decision, an appellate court must 'view the evidence objectively, not in the light most favorable to the decision of the Commission.'" *Id.* (citation omitted). "However, '[o]n matters of witness credibility and resolution of conflicting evidence, the appellate court defers to the Commission's determinations.'" *Id.* (citation omitted).

■ "While the appellate court gives deference to the Commission's findings of fact, the court is not bound by the Commission's conclusions of law or the Commission's application of law to the facts." *Id.* (citing *Lindsey v. Univ. of Mo.,* 254 S.W.3d 168, 170 (Mo.App. W.D.2008)).

## Analysis

■ Kimble asserts two points on appeal. First, he asserts that he did not leave work with the Employer voluntarily. Second, he asserts that even if he left work voluntarily, he had good cause to do so. Where, as here, an employer challenges the claimant's eligibility for benefits, the burden is on the claimant to demonstrate that *either* he did not leave employment voluntarily, or that if he did, he did so with good cause. *Harris,* 350 S.W.3d at 39.

### Point I

■ For his first point, Kimble claims that the Commission erred in finding that Kimble voluntarily left his employment without good cause related to his work or

as supplemented unless otherwise indicated.

Employer because there was insufficient competent evidence in the record to warrant a decision that Kimble voluntarily quit his employment in that the evidence shows that the Employer abolished Kimble's work position. We disagree.

■ "The question of whether an employee left work voluntarily or was discharged is generally a factual determination." *Harris,* 350 S.W.3d at 39 (citing *Johnson v. Div. of Emp't Sec.,* 318 S.W.3d 797, 799 (Mo.App. W.D.2010)). "In reviewing the factual findings, this court is to determine whether the Commission, based upon the whole record, could have reasonably made its findings and reached its result." *Valdez,* 349 S.W.3d at 454. "The factual findings of the Commission must be supported by substantial and competent evidence in the record." *Id.* " 'However, the standard of review is *de novo* when the issue is whether the facts found by the Commission can, as a matter of law, be considered to constitute a voluntary departure from employment.' " *Harris,* 350 S.W.3d at 39 (citation omitted). Where there is no factual dispute, we review the ruling to determine whether it was a misapplication or misinterpretation of law. *Valdez,* 349 S.W.3d at 455.

Here, there is no dispute that Employer eliminated Kimble's position as IT Manager. That fact, however, is not dispositive of Kimble's claim. There is also no dispute that Employer offered Kimble another position. The Employment Security Law is intended to provide security for the loss of employment generally and not necessarily for the loss of a particular position or job title. Section 288.020 states the purposes of the Employment Security Law:

1. As a guide to the interpretation and application of this law, the public policy of this state is declared to be as follows: Economic insecurity due to unemploy-

ment is a serious menace to health, morals, and welfare of the people of this state resulting in a public calamity. The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for compulsory setting aside of unemployment reserves to be used for the benefit of persons ***unemployed through no fault of their own.***

(Emphasis added.) "In construing provisions under Chapter 288, the goal of this court is to 'ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning.' " *Valdez,* 349 S.W.3d at 455 (citation omitted). " 'Courts should liberally construe the law to meet that goal.' " *Id.* (quoting *Campbell v. Labor & Indust. Relations Comm'n,* 907 S.W.2d 246, 249 (Mo.App. W.D.1995)). "Of course, we do not look only at the overall purpose of the legislative scheme, but also at the details of the qualification statutes in context." *Id.*

Kimble's claim is governed by section 288.050, which provides in pertinent part:

1. Notwithstanding the other provisions of this law, a claimant shall be disqualified for waiting week credit or benefits until after the claimant has earned wages for work insured pursuant to the unemployment compensation laws of any state equal to ten times the claimant's weekly benefit amount if the deputy finds:

(1) That the claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer[.]

Section 288.050.1(1).

■ "The disqualifying provisions of section 288.050 are to be strictly and nar-

rowly construed in favor of finding an employee to be entitled to compensation." *Valdez*, 349 S.W.3d at 455. "In interpreting this statute, Missouri courts 'have required that an employee not have caused his dismissal by ... *his choosing not to be employed*.' " *Id.* (quoting *Ford v. Labor & Indus. Relations Comm'n*, 841 S.W.2d 255, 257 (Mo.App. W.D.1992)) (emphasis added). Nothing in section 288.050 suggests a legislative intent to afford employment security in connection with an employee's right to hold *a specific position*. Rather, the law is designed to afford employment security in connection with the *loss of employment*, generally.

Thus, "[t]he phrase 'left work voluntarily,' as used in [section 288.050.1(1) ], actually means 'left *employment* voluntarily,' or 'voluntarily quit *employment*' ... [that which] we usually call a resignation or an abandonment of *a job* [.]" *Johnson.*, 318 S.W.3d at 800 (emphasis added); *see also Valdez*, 349 S.W.3d at 456.

> An employee is deemed to have left work voluntarily when he leaves of his own accord, as opposed to being discharged, dismissed, or subjected to layoff by the employer. The plain meaning of the term 'voluntarily,' in this context, means 'proceeding from the will: produced in or by act of choice. A claimant leaves work voluntarily when he leaves of his own volition.

*Valdez*, 349 S.W.3d at 456 (citations omitted). See *Difatta–Wheaton v. Dolphin Capital Corp.*, 271 S.W.3d 594, 598–99 (Mo. banc 2008) (Supreme Court held claimant did not make a voluntary choice to leave work where absent beyond leave due to emergency medical condition and took steps to notify employer and preserve employment).

Kimble relies on the aforesaid authorities, arguing that he was shocked and surprised at Employer's elimination of his position. Kimble essentially argues that at the moment his position as IT Manager was eliminated, he was discharged, and was eligible for unemployment.

In contrast, the Commission found that Kimble could have continued working for Employer but chose not to due to the change of his position; that Kimble informed Employer that he was refusing the Offer so that he could turn his part-time photography business into full-time work; that Kimble claimed that he actually rejected the Offer because the automobile sales industry had fallen off in recent years, because he did not have a car, and because he believed Employer did not want him to continue his employment; that Kimble did not attempt to perform work as a salesperson; that Kimble had performed work as a salesperson in the past for Employer and had performed at a middle level; that Kimble voluntarily quit work when he chose not to accept the Offer; and that Kimble could have continued working for Employer indefinitely.

The Commission's factual findings, which are not contested by Kimble, constitute a voluntary departure *from employment* as a matter of law. *See O'Donnell v. Labor and Industrial Relations Commission*, 564 S.W.2d 87 (Mo.App.1978) (claimant voluntarily quit employment when refused re-assignment to former position of general kitchen worker after classification as a manager-trainee); *Bryant v. Labor and Industrial Relations Commission*, 608 S.W.2d 524 (Mo.App. W.D.1980) (managing attorney voluntarily left employment with legal aid office when informed his branch would be closing but rejected offered staff attorney position at another branch); *Miller v. Help at Home, Inc.*, 186 S.W.3d 801 (Mo.App. W.D.2006) (claimant voluntarily left employment when submitted resignation after informed hours would

be reduced for a period of two weeks); *Schuenemann v. Route 66 Rail Haven, Ltd.,* 353 S.W.3d 691 (Mo.App. S.D.2011) (claimant who rejected offer of employment in a different position at a different location left voluntarily because he could have continued his employment).

Although Kimble argues that he did not quit his job because he was told he no longer had a job, the undisputed record reflects that Kimble was told he had a job *if he wanted one,* albeit in a different position. Kimble fails to cite any authority to support his contention that the termination of *a position* summarily constitutes a discharge *from employment* where the employee is offered another position with the same employer. "Mere conclusions and the failure to develop an argument with support from legal authority preserve nothing for review." *Al–Hawarey v. Al–Hawarey,* 388 S.W.3d 237, 246 (Mo.App. E.D.2012). If an appellant expects to prevail, he must cite appropriate and available precedent and " 'if no authority is available to cite, he should explain the reason for the absence of citations.' " *M.H. v. Garcia,* 385 S.W.3d 489 (Mo.App. W.D.2012) (citation omitted).

The Commission did not err in finding that Kimble voluntarily left his employment. Though Kimble did not choose to have his position as IT Manager eliminated by Employer, he did choose not to be employed by Employer. *Valdez,* 349 S.W.3d at 455.

Point One is denied.

## *Point II*

For his second point, Kimble argues that even if the Commission was correct in finding that Kimble left his employment voluntarily, the Commission erred in finding that he did so without good faith. We disagree.

Section 288.050 disqualifies a claimant from receiving unemployment compensation benefits if "the claimant left work voluntarily without good cause attributable to such work or to the claimant's employer." Section 288.050.1(1). The determination of good cause is "a question of law and we do not defer to the Commission's determination on the matter." *Cooper v. Hy-Vee, Inc.,* 31 S.W.3d 497, 502 (Mo.App. W.D.2000). " '[G]ood cause depends on an objective analysis of the particular facts of each case.' " *Rufer v. Rauch,* 362 S.W.3d 28, 33 (Mo.App. S.D. 2012) (citation omitted). " 'The claimant bears the burden of demonstrating good cause for the voluntary departure and must establish two elements, reasonableness and good faith.' " *Id.* (citation omitted). "To establish the 'reasonableness' element, [a claimant] 'must demonstrate that the circumstances of [ ] employment would cause a reasonable person to terminate the employment rather than continue working.' " *Id.* at n. 3. (citation omitted). "With respect to the 'good-faith' element, a claimant *must* demonstrate that [he] made an effort 'to resolve the dispute before resorting to the drastic remedy of quitting [his] job.' " *Id.* at 33 (emphasis added) (citation omitted).

> In many cases, good faith will require a communication to the employer of the employee's problems or concerns. This is intended to provide the employer with an opportunity to correct or ameliorate conditions that the employer did not know about or *did not know were a cause of concern to the employee.*

*Cooper,* 31 S.W.3d at 504–05 (emphasis added). An exception exists, however, where it is clear that it would be futile to attempt to work through conditions otherwise justifying resignation. *Cf. Cooper,* 31 S.W.3d at 505 (a prior complaint by the employee to management is not necessary for good faith when evidence suggested

that employee's change in duties was substantial and that employer's motives were not sincere); *Rodriguez v. Osco Drug,* 166 S.W.3d 138, 143 (Mo.App. W.D.2005) (noting that good faith does not require an employee complaint if the employer has failed to address previous complaints).

Here, the Commission held Kimble failed to exercise good faith in quitting his job because he did not even attempt to perform the sales position and did not discuss his concerns regarding the position with Employer. In so holding the Commission stated:

> We are convinced that a reasonable worker, acting in good faith, would have at least given the salesperson position a try before deciding that it was unacceptable. During his considerable tenure with employer, claimant had worked for about four years as a salesperson, and so it was not as if employer were forcing upon him a position that was entirely outside the realm of his past experience. Claimant's concerns about the salesperson job had to do with his prediction that he wouldn't be able to sell cars, and thus would be unable to maintain his income. This concern ... strikes us as reasonable, and it may be that claimant would have been unable to perform as a salesperson. But because claimant didn't even try the job, there is no evidence to show that. Employer gave claimant a week off work with pay to allow him time to consider the change in his duties. Claimant admits that he took no steps to discuss the matter with his supervisor or seek clarification of the terms of the salesperson job. Claimant didn't ask what the commission structure would be, whether he would keep his car allowance, or even what the position would pay. If claimant had taken any of these steps, it may be that he could have reached a satisfactory arrangement with employer, and this work separation could have been avoided. But claimant did not do so because he had already made the choice to quit, based on his reaction to the employer's choice to suddenly change his duties.... Because claimant took no steps to salvage the employment relationship once his supervisor told him of the change in his duties, we conclude claimant failed to exercise good faith.

We agree with the Commission.[4] It is undisputed that Kimble did not attempt to perform in the position of salesperson before quitting and did not discuss his concerns regarding the terms of the Offer with Employer. *See Schuenemann,* 353 S.W.3d at 697 (claimant failed to exercise good faith in quitting employment, after informed of change of position and location which included additional duty of laundry, when he did not even attempt employer's proposed reassignment or attempt to clarify his new duties with employer); *Prock v. Hartville Feed, LLC,* 356 S.W.3d 839, 846 (Mo.App. S.D.2012) (claimant failed to exercise good faith in quitting his employment without attempting to perform his new duties); *Shields v. Proctor & Gamble Paper Products Co.,* 164 S.W.3d 540, 545 (Mo.App. E.D.2005) (claimant failed to exercise good faith in voluntarily accepting separation package in lieu of remaining employed working in a new position on a production line notwithstanding claim that employer offered no formal training for

---

4. Implicit in the Commission's holding is that a claimant who does exercise good faith to attempt to resolve disputes or concerns about a new position, and/or who agrees to perform in a new position notwithstanding disputes or concerns, is not *per se* prohibited from thereafter voluntarily quitting and filing an unemployment claim on the basis of good cause attributable to work or the employer.

new position where claimant made no effort to discuss his concerns).

In response, Kimble argues that a drastic reduction in salary alone justifies a resignation, citing *Armco Steel Corp. v. Labor and Indus. Relations Commission*, 553 S.W.2d 506 (Mo.App.1977) and *Miller*, 186 S.W.3d at 808. While these cases indeed support Kimble's proposition, Kimble fails to address their application to his circumstances. The uncontested evidence supports the Commission's determination that the Offer had the potential of placing Kimble in a comparable position financially, and that Kimble had no way of knowing whether his contrary fears were well founded, as he rejected the Offer and admittedly failed to attempt to negotiate the terms of his compensation. In addition, the Commission accepted Kimble's testimony that he was not told what the compensation package for the salesperson's position would be, and did not ask for that information, before resigning; in these circumstances, it is difficult for Kimble to argue that his resignation was animated by concerns over a reduction in salary.

Kimble also argues that a significant change in working conditions has long been recognized as a "not so subtle push out the door," citing *Sokol v. Labor and Indus. Relations Commission*, 946 S.W.2d 20, 24 (Mo.App. W.D.1997). Once again, though the cited proposition is sound, Kimble offers no explanation for its application to his case. "Mere conclusions and the failure to develop an argument with support from legal authority preserve nothing for review." *Al–Hawarey*, 388 S.W.3d 237, 246. *Sokol* is factually distinguishable as the employer in that case engaged in arbitrary and unfair treatment when it insisted that the claimant sign a new contract which varied substantially from his existing contract without honoring the claimant's request for time to consult with counsel. 946 S.W.2d at 27. Employer engaged in no such behavior here. Although the sales position was a substantial change from the position of IT Manager, there is no evidence in the record calling into question Employer's sincerity in making the Offer. To the contrary, Employer gave Kimble a paid week to consider the Offer suggesting that Employer's Offer was bona fide and sincere, and that Employer understood Kimble needed time to consider the change in position.

Finally, Kimble argues that the Offer "downgraded his entire life's work" as Employer's actions communicated to Kimble, "we don't need your experience as a long-term employee any longer." Kimble claims that this mistreatment is the "other factor" courts have referred to in determining whether an employer's actions were so egregious as to support a conclusion that an employee's voluntary departure was "reasonable." The difficulty with Kimble's assertion, however, is that that it is refuted by the evidence.

The Commission did not err in finding that Kimble failed to exercise good faith in quitting his employment. Point Two is denied.

## Conclusion

We affirm the Commission's decision that Kimble voluntarily left his employment without good cause.

All concur.