

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| **MARY K. LUCIDO,** | ) | |
| | ) | |
| **Appellant,** | ) | |
| | ) | **WD76940** |
| **v.** | ) | |
| | ) | **OPINION FILED:** |
| | ) | **September 9, 2014** |
| **DIVISION OF EMPLOYMENT** | ) | |
| **SECURITY,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**Appeal from the Labor and Industrial Relations Commission**

**Before Division I:** Mark D. Pfeiffer, Presiding Judge, and
Lisa White Hardwick and Karen King Mitchell, Judges

Mary K. Lucido ("Lucido") appeals a decision of the Labor and Industrial Relations Commission ("Commission"), which affirmed the decision of the Appeals Tribunal denying Lucido's application for unemployment benefits. We reverse and remand for further proceedings consistent with this opinion.

## Factual and Procedural Background

Lucido began working for American Greetings Corp. ("Employer") in January of 2007. She was a part-time merchandiser, handling Employer's greeting cards and gift wrap in one Wal-Mart store and three Dollar General stores in Columbia, Missouri. She earned $8.09 per

hour. Lucido worked fifteen to twenty hours per week among the four stores, but the vast majority of her work involved the Wal-Mart store. The three Dollar General stores combined only required about forty-two minutes of her time every other week.

When there were changes in management at the Wal-Mart store in early 2013, Lucido began to experience some difficulties with the new management. She informed her supervisor, Ed Cleaveland ("Cleaveland"), about her difficulties, and he recommended that Lucido have her husband accompany her to the store to help her. At one point, Cleaveland asked Lucido why she didn't just quit and told her that another merchandiser wanted the Wal-Mart store. Lucido responded that she couldn't live on what she would make working only at her other three stores (which would have yielded just over $11.00 per month). On May 8, 2013, Cleaveland sent Lucido an email stating that he had reassigned the Wal-Mart store to another merchandiser and that Lucido should turn in the Motorola scanner that she used to keep track of the inventory at all of the stores she controlled. Lucido was directed to meet Cleaveland at the Wal-Mart store the next day to return the scanner.

On May 9, 2013, Lucido met with Cleaveland and returned her Motorola scanner. She told Cleaveland that she was shocked and stated, "I cannot believe you're getting rid of me like this." Cleaveland responded, "Why are you surprised? You weren't happy here." Then Cleaveland told Lucido she could keep her other three stores (which he knew would pay her about $11.00 per month) and that he would get her an older scanner for her work at the other three stores. She was not offered any additional stores to replace Wal-Mart. Lucido responded, as she had previously told Cleaveland, that it was not financially feasible for her to exclusively work the other stores for forty-two minutes every other week and reiterated that she could not live on $11.00 per month. Cleaveland offered nothing further to Lucido, and Lucido left. After

2

the meeting, both Cleaveland and Lucido understood that Lucido no longer worked for Employer. They did not speak again after that meeting.

Lucido filed a claim for unemployment benefits. Employer challenged Lucido's claim, maintaining that Lucido had quit her job voluntarily, and Lucido's claim for benefits was denied. Lucido appealed to the Appeals Tribunal, and a telephone hearing was held. Lucido and Cleaveland both testified at the telephone hearing.[1] After the hearing, the appeals referee made the following findings in the decision:

> The employer's witness credible [sic] testified that claimant [Lucido] was assigned four stores and because of lack of performance in one store, she was removed from that store and instructed to return the mechanical scanner that belonged to that particular store. Claimant was *still assigned to cover three other stores*, but informed the supervisor that it was not worth her time to continue her employment.

(Emphasis added.) The appeals referee's decision concluded that Lucido resigned voluntarily and without good cause because Lucido did not make a good faith effort to maintain her employment, concluding: "Here, claimant quit a job because she was removed from 1 of the 4 stores where she was assigned."

Lucido appealed the referee's decision to the Commission, which affirmed the referee's determination over the dissent of one Commissioner. Lucido appeals the Commission's decision here.

**Standard of Review**

Our review of the Commission's decision denying unemployment benefits is governed by section 288.210.[2] In keeping with section 288.210:

---

[1] We note that the hearing transcript is extremely difficult to read because the appeals referee repeatedly cut off and spoke over both Lucido and Cleaveland. In addition, the referee would periodically stop and recap the testimony, repeatedly misquoting and mischaracterizing the testimony. This is a disservice to both the Employer and Lucido, and we encourage the Appeals Tribunal in the future to strive to create a cleaner record.

[2] All statutory references are to RSMo 2000 as updated by supplement.

We may not reverse, remand, or set aside the Commission's decision unless the Commission acted without or in excess of its powers, the decision was procured by fraud, the decision was not supported by facts, or the decision was not supported by sufficient competent evidence in the whole record to warrant the making of or the denial of the award.

*Weirich v. Div. of Emp't Sec.*, 301 S.W.3d 571, 574 (Mo. App. W.D. 2009).

Unlike most of the cases we review, in unemployment benefit cases, we do not view the facts in the light most favorable to the Commission's decision; instead, we view the evidence objectively. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). However, on matters of witness credibility, we will defer to the Commission's determinations. *Seck v. Dep't of Transp.*, 434 S.W.3d 74, 79 (Mo. banc 2014). Conclusions of law and the application of the law to the facts are matters we review *de novo*. *Id.* at 78.

**Analysis**

An employee is disqualified from receiving unemployment benefits if she "has left work voluntarily without good cause attributable to such work or to the claimant's employer[.]" § 288.050.1(1). However, "[s]ection 288.050.1(1) must be strictly and narrowly construed in favor of finding that an employee is entitled to compensation." *Darr v. Roberts Mktg. Grp., LLC*, 428 S.W.3d 717, 724 (Mo. App. E.D. 2014).

The legislature explained the public policy behind the Employment Security Act within the Act itself:

1. . . . Economic insecurity due to unemployment is a serious menace to health, morals, and welfare of the people of this state resulting in a public calamity. . . . [T]he public good and the general welfare of the citizens of this state require the enactment of this measure.

2. *This law shall be liberally construed* to accomplish its purpose to promote employment security . . . .

§ 288.020.1-.2 (emphasis added).

4

In this case, Lucido contends that the Commission erred in determining that she had voluntarily left her employment without good cause attributable to her work. Therefore, we must determine first, whether she voluntarily left her employment; and second, if so, whether she did so with just cause attributable to her employment. "The question of whether an employee left work voluntarily or was discharged is generally a factual determination." *Kimble v. Div. of Emp't Sec.*, 388 S.W.3d 634, 639 (internal quotation omitted). Because it is a factual finding, we examine whether the Commission could reasonably have made the finding based upon the whole record. *Id.* Here, the Commission determined that Lucido had quit her work voluntarily. Lucido counters that she did not leave voluntarily because she wanted to continue to work for Employer, but she simply could not feasibly do so under the new changed terms of her employment. While we acknowledge that there is some authority stating that "a discharge for failure to agree to new terms of employment" may not always constitute a voluntary quit, *Sokol v. Labor Indus. Relations Comm'n*, 946 S.W.2d 20, 24 (Mo. App. W.D. 1997), we need not re-examine the Commission's factual finding that Lucido's departure from Employer was voluntary, because, as in *Sokol*, we ultimately determine that she had good cause to quit.

Assuming that, as the Commission found, Lucido left her work voluntarily, the question becomes whether she had good cause attributable to her employer to leave her employment. *Cooper v. Hy-Vee, Inc.*, 31 S.W.3d 497, 502 (Mo. App. W.D. 2000). "The determination of whether an employee had 'good cause' to leave employment voluntarily is determined on a case-by-case basis." *Darr*, 428 S.W.3d at 724. And whether the facts, as found by the Commission and supported by substantial evidence on the whole record, establish good cause is a determination of law, which we review independently, without deference to the Commission. *Id.* Lucido, as the claimant, bears the burden of demonstrating good cause for her voluntary

departure from employment, and she must establish two elements—reasonableness and good faith. *Kimble*, 388 S.W.3d at 641. In Missouri, good cause has been interpreted as "'cause that would motivate the average able-bodied and qualified worker in a similar situation to terminate his or her employment.'" *Hessler v. Labor & Indus. Relations Comm'n*, 851 S.W.2d 516, 518 (Mo. banc 1993) (quoting *Belle State Bank v. Indus. Comm'n*, 547 S.W.2d 841, 846 (Mo. App. 1977)).[3]

In most cases, "good faith will require a communication to the employer of the employee's problems or concerns. This is intended to provide the employer with an opportunity to correct or ameliorate conditions that the employer did not know about or did not know were a cause of concern to the employee." *Cooper*, 31 S.W.3d at 504. As *Kimble* points out, however, exceptions exist in situations where attempts to work through the situation would be futile, where there is a drastic reduction in the employee's salary, or where a significant change in working conditions may be viewed as a "not so subtle push out the door." *Kimble*, 388 S.W.3d at 641-43 (citing *Cooper*, 31 S.W.3d at 505; *Rodriguez v. Osco Drug*, 166 S.W.3d 138, 143 (Mo. App. W.D. 2005); *Armco Steel Corp. v. Labor & Indus. Relations Comm'n*, 553 S.W.2d 506 (Mo. App. 1977); and *Sokol*, 946 S.W.2d at 24).

The Commission's decision, which adopts the decision of the appeals referee, faults Lucido for failing to attempt to maintain her employment by continuing to work in the three remaining stores she had after the Wal-Mart reassignment. This is, in essence, a determination

___

[3] Missouri's 97th General Assembly passed SB No. 510, which became effective on August 28, 2014. In SB No. 510, the Missouri General Assembly modified section 288.050(1) to include a definition of "good cause," stating that the term, "for the purposes of this subdivision, shall include only that cause which would compel a reasonable employee to cease working or which would require separation from work due to illness or disability." http://www.senate.mo.gov/14info/pdf-bill/tat/SB510.pdf. Though this definition was not in effect at the relevant time frame identified by Lucido's departure from employment, the statutory definition would not change the analysis of our ruling today. That said, in situations involving a "good cause" analysis for departures from employment beginning on August 28, 2014, the legislature's definition will be the yard stick by which "good cause" is measured.

that Lucido failed to act in good faith. The Commission relies on cases stating that it is better for an employee facing reduced hours to keep the employment and seek partial unemployment benefits. *See, e.g., Drake v. Lengel*, 403 S.W.3d 688, 692 (Mo. App. W.D. 2013). While we agree that *generally* it is better for an employee to remain partially employed rather than to quit her work entirely, we find that this case falls outside of the general rule and is more akin to the cases cited in *Kimble*. It is undisputed that Lucido earned $8.09 per hour and that her duties at the three Dollar General stores took her a *combined* forty-two minutes every other week. Accordingly, Lucido's "partial employment" would yield her just over $11.00 per month. And this is traveling among the three stores, which we may assume are not all next door to one another. Lucido testified, "I'm losing money by driving all over for forty-two minutes every other week." Cases like *Drake* do not require an employee to *lose* money to continue to work at a job after such an enormous reduction in hours. The fact that the store representing ninety-five percent of Lucido's hours was reassigned renders the Commission's finding that Lucido "was removed from 1 of the 4 stores where she was assigned" misleading and not a basis upon which to conclude that she did not act in good faith. Instead, Lucido's drastic reduction in hours was a "not so subtle push out the door," and any suggestion to the contrary by Employer is disingenuous.

Additionally, we find the Commission's factual determination that Lucido "did not attempt to maintain her employment" is unsupported by competent and substantial evidence. Lucido admitted having problems with the Wal-Mart store but testified that she had attempted to resolve the problems by bringing them to the attention of her supervisor, Cleaveland, and by having her husband help her at the store on occasion (at her supervisor's request). She also testified that when Cleaveland initially mentioned that another merchandiser would like to have

7

the Wal-Mart account, Lucido objected, telling Cleaveland that she could not live on what she would earn from the Dollar General stores alone. Employer did not offer Lucido any other stores to make up for the loss of the Wal-Mart store. Although the brief of the Division of Employment Security argues that it was *possible* that Lucido would have been assigned additional stores in the future or that the Wal-Mart store *might* have been reassigned to her upon the event of some future change in management, there is no competent and substantial evidence in the record to support any finding that these *possibilities* were ever even mentioned to Lucido. "We do not require a clairvoyant ability on the part of the claimant to predict an action or attitude that the employer may have chosen to undertake at some future time." *Darr*, 428 S.W.3d at 725. In sum, Employer knew all about the sources of Lucido's problems with Wal-Mart and that its suggested solution, reassigning the store to another merchandiser while she continued to service the three Dollar General stores, was financially infeasible to Lucido or to any other employee similarly situated. Employer did not need any additional notice of Lucido's concerns or any additional opportunity to ameliorate them.[4]

Lucido's decision to refuse Employer's "offer" that she continue to service the Dollar General stores for $11.00 per month gross wages was therefore objectively reasonable and in good faith.

---

[4] The brief of the Division of Employment Security ("Division") also argues that Lucido should not receive unemployment benefits because "[Lucido] caused this problem." The Division's brief goes on to elaborate on Lucido's poor performance at the Wal-Mart location. Any suggestion by the Division that Lucido's actions constitute "misconduct" is misplaced in this appeal. Employer did not allege nor attempt to prove misconduct on Lucido's part below; and absent such allegation and proof below, an employee's poor work performance is irrelevant to her qualification to receive unemployment benefits. *Smith v. Delmar Gardens of Creve Couer*, 406 S.W.3d 95, 99 n.3 (Mo. App. E.D. 2013) ("We emphasize that the law does not restrict unemployment compensation benefits to only employees who suffered no-fault termination, i.e. mass layoffs. Rather, there is room in the statute for compensation for those who have been terminated because of poor judgment or poor performance so as not to punish workers who are terminated because they are unable to do the job according to their employer's standards."). Furthermore, the Division's belated "misconduct" or "poor performance" argument on appeal directly refutes the Division's statement in its brief that "Employer was not punishing Appellant when it reassigned the Wal-Mart store." This said, for claims of "misconduct" that are asserted and preserved by employers on or after August 28, 2014 (effective date), we note that Missouri's 97th General Assembly modified the definition of "misconduct" in section 288.030.1(23). http://www.senate.mo.gov/14info/pdf-bill/tat/SB510.pdf.

8

Lucido's point on appeal is granted.

## Conclusion

Because the Commission's decision denying Lucido's application for unemployment benefits was erroneous, we reverse the Commission's decision, conclude that Lucido is entitled to receive unemployment benefits, and upon remand to the Commission, direct the Commission to calculate and award the amount of unemployment benefits that is due and owing pursuant to Missouri's Employment Security Act.

_Mark D. Pfeiffer_
Mark D. Pfeiffer, Presiding Judge

Lisa White Hardwick and Karen King Mitchell, Judges, concur.