

# In the
# Missouri Court of Appeals
# Western District

FEDRA EKRES,                )
                                      )
           Appellant,         )    **WD84496**
                                        )
v.                                )    **OPINION FILED:**
                                      )    **February 15, 2022**
DIVISION OF EMPLOYMENT    )
SECURITY,                   )
                                      )
           Respondent.      )

**Appeal from the Labor and Industrial Relations Commission**

Before Special Division: Cynthia L. Martin, Chief Judge, Presiding, Gary D. Witt, Judge
and W. Brent Powell, Special Judge

Fedra Ekres ("Ekres") appeals from a decision by the Labor and Industrial Relations

Commission ("Commission"), which found that Ekres was disqualified from receiving

employment benefits because she voluntarily quit her employment at Franklin Energy

Services, LLC ("Franklin") without good cause. Ekres argues that the Commission erred

in concluding that she voluntarily quit her employment without good cause because she

did not violate Franklin's pandemic remote-work policy by moving to New York, and

because she would have returned to in-person work in St. Louis when required to do so.

Because we find that Ekres did not leave her employment voluntarily, we reverse the Commission's decision and remand for entry of an award of benefits.

## Factual and Procedural Background[1]

In February 2019, Franklin hired Ekres to work as a full-time customer service representative in its St. Louis, Missouri call center. As a customer service representative, Ekres fielded calls from customers of Ameren Missouri, a client of Franklin's. In mid-March 2020, Franklin notified Ekres and other employees working in its St. Louis call center that they would be required to work remotely due to the COVID-19 pandemic.

Ekres began working remotely as instructed by Franklin. At that time, Ekres lived with her partner in a multi-floor apartment building in St. Louis. Ekres and her partner are immunocompromised. Due to health concerns given the COVID-19 pandemic, and because Ekres lived in a very populated apartment building, Ekres felt it was safest to move to New York state to be with her family.

Before moving, Ekres sent an email to her team leader, manager, supervisor, and regional director stating that she "was moving [] to New York, and [she] had arranged the move around [her] work schedule so that it would not affect [her] job." Ekres indicated that she wanted to continue working at Franklin, but was moving due to the COVID-19 pandemic and her immunocompromised status. Ekres requested "to have a response

---

[1]"In reviewing the Commission's decision, an appellate court must view the evidence objectively, not in the light most favorable to the decision of the Commission." *417 Pet Sitting, LLC v. Div. of Emp't Sec.*, 616 S.W.3d 350, 356 n.2 (Mo. App. W.D. 2020) (quoting *Barron v. Div. of Emp't Sec.*, 435 S.W.3d 654, 657 (Mo. App. W.D. 2014)).

immediately if there was any issue." Someone from Franklin replied that they appreciated that Ekres had communicated her concern, and that they would be in touch with her.

Ekres moved to New York state. She continued to work remotely for a week without any issue. Ekres did not miss any scheduled work days during or after the move. However, Ekres's employment with Franklin ended on March 31, 2020, following a telephone call with two of her supervisors.

Ekres applied for unemployment benefits. Franklin protested Ekres's application for benefits, and claimed that Ekres was ineligible because she voluntarily quit her job. A deputy of the Division of Employment Security ("Deputy") concluded that Ekres was disqualified from receiving benefits because she voluntarily quit her employment at Franklin "due to a reason that was not good cause connected to the work" or to Franklin.

Ekres appealed the Deputy's decision to the Appeals Tribunal ("Tribunal"). The Tribunal heard testimony from Ekres and Linda Trimble ("Trimble"), a human resources representative for Franklin.

Ekres testified that she did not quit, but instead that Franklin terminated her during the March 31, 2020 call with two of her supervisors. Ekres said that her supervisors told her she was being let go because she had "moved out of state." Ekres testified about the email notifying Franklin that she planned to move to New York. Ekres also testified that she told her supervisors during the March 31, 2020 phone call that she wished to continue working at Franklin.

Though Trimble was not a participant on the March 31, 2020 call with Ekres, she was the only witness who testified for Franklin based on her personal knowledge of the

3

company's business records and policies. The Tribunal asked Trimble why Ekres did not work after March 31, 2020, and Trimble replied:

> [Ekres's] position was a position based out of [St.] Louis, Missouri, [] on the program there, so hers was a position that needed to be based there. . . . [E]ven though we were working remotely at the time, [] we had no indication of how long it would last. However [], *we had full intention that it was a short tenure of working from home, and she would need to be--the position was based in that location, so when we were able to go back in the office[,] she would need to be at the office and not in another location*.

(Emphasis added.) The Tribunal asked whether Trimble recalled Ekres's testimony that other Franklin employees were permitted to work remotely from outside of Missouri, and Trimble replied: "[W]e do have others that work in different locations[,] but we have[] call centers in different areas[] and it depends on the particular contract that they are supporting as to [] where we can support . . . a work location." In reference to the March 31, 2020 call, the following exchange occurred:

> [Trimble]: The information provided to me [was] that [Ekres's supervisors] spoke with her [] and explained [that] *they knew about her decision to move* to New York, and that they could no longer support her position from that location. [Y]ou know *they understood her circumstances[,] but again, when they return to the office her position was based . . . in [St.] Louis because of our contract obligations with our clients, that they would not be able to support her <u>at that point</u> working remotely*.
>
> [Tribunal]: They *could not support her working remotely from New York* is what you're saying.
>
> [Trimble]: *Correct*[,] since her position was tied to [St.] Louis, Missouri.
>
> [Tribunal]: All right, so if she had [] stayed in Missouri, she would [still have] been able to work [] remotely at that time? I assume [Franklin] was still working [] remotely on March 31, 2020. . . .
>
> [Trimble]: Yes.

4

[Tribunal]: And when did [Franklin] stop [] working remotely or when did it return to office [] operations?

[Trimble]: *[W]e are still working remotely*. . . .

. . . .

[Tribunal]: [H]er work was satisfactory [as of] March 31, 2020. Wasn't it?

[Trimble]: Yes.

(Emphasis added.)

Trimble explained that before the COVID-19 pandemic, Franklin's employee handbook contained a remote work policy requiring an employee to receive advance management approval before working remotely, but that Franklin "made a dramatic switch when COVID and the pandemic hit as the safety of our employees [sic] to have everyone that could work remotely be at home-base and not in the offices, [] so we were no longer able to go by that policy in our handbook, so we gave permission to everyone to work remotely."

The Tribunal sought to clarify whether it was a violation of Franklin's contract with Ameren Missouri if an employee's remote work was not based in the St. Louis area:

[Tribunal]: All right, but nevertheless, [] it was viewed as a contract violation [] if [] remote work was not [] based in the [St.] Louis area?

[Trimble]: Wait, so . . . Franklin [] has contracts with different utility companies and within that contract, we have a certain amount of positions that we're obligated to have in [the] city of [St.] Louis, Missouri to do the work.

[Tribunal]: And *then the position that [Ekres] held . . . was that a position that [] was not entitled to work remotely from another state*?

[Trimble]: *Correct, outside of the pandemic*.

5

[Tribunal]: *During the pandemic she could have worked [] her position [] out of state, such as in New York?*

[Trimble]: *Yes.* We were allowed or are allowing employees to work remotely. However, as I indicated, [] *they would need to be in [St.] Louis at the time of resuming normal operations and at that point, we had no determination of when that would be but[,] yes. She could have*.

[Tribunal]: Well, if she could have worked out of state, *then why was she separated from the work on March 31, 2020*?

[Trimble]: Because her position . . . was a [St.] Louis-based position and at that point, it needed to be based in [St.] Louis, and the team was not able to support her [because] *we didn't have those type of positions in New York, and hers was tied to a program in [St.] Louis*. *However[,]* now that *the pandemic has lasted longer than we've ever thought it would last*, we still have employees working remotely.

(Emphasis added.)

In rebuttal, Ekres testified that she did not want to end her employment at Franklin, and that "if they told me that you know that they gave me the option to [] go back to [St.] Louis and keep my position[,] I would have." The Tribunal asked Ekres whether she communicated her willingness to return to St. Louis to her supervisors on March 31, 2020, and she replied, "They never discussed that with me. They never discussed that option and in the handbook it says that they're supposed to offer me some [] I guess formal process, and that wasn't given to me." Ekres explained that Franklin's employee handbook provided for a disciplinary process which Franklin was to follow prior to discharging an employee; however, Ekres stated that she had not received any warning, but was let go on March 31, 2020 after she worked satisfactorily, but remotely in New York, for a week. Trimble then testified that on March 31, 2020, Franklin representatives communicated that Ekres's

6

position needed to be based in St. Louis, and that Ekres's "indication was that . . . due to her health concerns, she needed to be [] in New York. There was no indication of her going back." Ekres contested that she was given an opportunity to move back to St. Louis in order to keep her job at Franklin.

The Tribunal issued its decision affirming the Deputy's determination disqualifying Ekres from receiving benefits, finding that Ekres voluntarily quit her work at Franklin without showing good cause. The Tribunal found that after Franklin permitted workers, including Ekres, to work remotely, Ekres sent an email to Franklin advising that she planned to move to New York. The Tribunal found that Ekres then moved to New York and continued to work remotely for Franklin, but that on March 31, 2020, two Franklin representatives "advised [Ekres] that she could not work remotely from her residence in New York." The Tribunal stated:

> Pursuant to the existing contractual requirements between the employer and the client business, the claimant was required to be attached to an office of the employer in St. Louis, Missouri. No discussion occurred concerning a return to the St. Louis area by the claimant. The claimant regarded the separation to be a discharge from the work. Under the employer's handbook, various disciplinary steps were required to be taken prior to discharge. Later in 2020, as the pandemic continued, it was no longer required that workers working remotely be located in the St. Louis area.

The Tribunal found that while Ekres regarded her separation from Franklin "as a discharge from the work, a closer analysis establishes that [Ekres], after she moved to New York, could no longer meet a condition of her employment; namely, that she be associated with an office of the employer in St. Louis, Missouri." The Tribunal explained that "[c]aselaw in Missouri has held that if a worker is no longer able to meet the standards of

7

employment, for example, a requirement of a specialized license, the subsequent loss of employment is regarded as a voluntary separation from the work."  Therefore, the Tribunal concluded that Ekres's separation from Franklin was voluntary and that although she had health concerns, "there is no showing that [Ekres's] work would cause [her] health to be in peril."

Ekres appealed the Tribunal's decision to the Commission.  On March 24, 2021, the Commission affirmed the Tribunal's decision and adopted the Tribunal's factual findings ("Decision").  Ekres appeals.

## Standard of Review

Pursuant to section 288.210, we "may modify, reverse, remand for rehearing, or set aside the decision of the Commission on the following grounds and no other: (1) the Commission acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was no sufficient competent evidence in the record to warrant the decision." *417 Pet Sitting, LLC v. Div. of Emp't Sec.*, 616 S.W.3d 350, 358 (Mo. App. W.D. 2020) (quoting *Timster's World Found. v. Div. of Emp't Sec.*, 495 S.W.3d 211, 217 (Mo. App. W.D. 2016)).[2]  The Commission's factual findings, "if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive," and our jurisdiction is "confined to questions of law."  Section 288.210.  "When . . . the Commission adopts the decision of the [] Tribunal, we consider the Tribunal's decision to be the Commission's for purposes of our review."

---

[2]All statutory references are to RSMo 2016, as amended through March 31, 2020.

8

*Ashford v. Div. of Emp't Sec.*, 355 S.W.3d 538, 541 (Mo. App. W.D. 2011) (citing *Walker v. Div. of Emp't Sec.*, 333 S.W.3d 517, 519 (Mo. App. W.D. 2011)).

"The question of whether an employee left work voluntarily or was discharged is generally a factual determination." *Kimble v. Div. of Emp't Sec.*, 388 S.W.3d 634, 639 (Mo. App. W.D. 2013) (quoting *Harris v. Div. of Emp't Sec.*, 350 S.W.3d 35, 39 (Mo. App. W.D. 2011)). "In reviewing the factual findings, this court is to determine whether the Commission, based upon the whole record, could have reasonably made its findings and reached its result." *Id.* (quoting *Valdez v. MVM Sec., Inc.*, 349 S.W.3d 450, 454 (Mo. App. W.D. 2011)). "The factual findings of the Commission must be supported by substantial and competent evidence in the record." *Id.* (quoting *Valdez*, 349 S.W.3d at 454).

"Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record." *417 Pet Sitting*, 616 S.W.3d at 358 (quoting *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003)). The evidence is viewed objectively, "not in the light most favorable to the decision of the Commission. However, on matters of witness credibility and resolution of conflicting evidence, the appellate court defers to the Commission's determinations." *Barron v. Div. of Emp't Sec.*, 435 S.W.3d 654, 657 (Mo. App. W.D. 2014) (quoting *Kimble*, 388 S.W.3d at 638). "While the appellate court gives deference to the Commission's findings of fact, the court is not bound by the Commission's conclusions of law or the Commission's application of law to the facts." *Id.* (quoting *Kimble*, 388 S.W.3d at 638).

9

## Analysis

Ekres raises five points on appeal. Ekres's first point on appeal asserts that the facts found by the Commission do not support the determination that Ekres voluntarily quit her employment because Ekres's remote work performance in New York complied with Franklin's remote work policy. Ekres's second point on appeal argues that the Commission erred because there was no sufficient competent evidence in the record to warrant its Decision finding Ekres's loss of employment was voluntary due to her failure to meet a condition of her employment because the record establishes that Ekres fully complied with Franklin's pandemic remote-work policy. In Ekres's third and fourth points on appeal, she contends, respectively, that the Commission erred because the facts found by the Commission do not support its Decision, and because there was no sufficient competent evidence in the record to warrant its Decision, in that Ekres established that she "was willing to relocate if and as necessary but was not given the opportunity to do so." Ekres's fifth point on appeal alternatively argues that should we conclude that Ekres voluntary quit, the Commission nevertheless erred because Ekres established good cause for her separation.

Ekres's first four points on appeal collectively challenge whether the Commission could have reasonably made its findings and reached its result that Ekres voluntarily quit her employment. We address those points collectively. Because we conclude that the Commission's Decision that Ekres voluntarily quit her employment with Franklin is not supported by sufficient competent evidence, we need not address Ekres's fifth point on appeal, which alternatively argues that if Ekres voluntarily quit, she did so for good cause.

10

Section 288.050.1 provides that a claimant shall be disqualified for unemployment compensation "if the deputy finds [] [t]hat the claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer." "No definition of 'voluntarily' is stated." *Difatta-Wheaton v. Dolphin Capital Corp.*, 271 S.W.3d 594, 596 (Mo. banc 2008). However, Missouri courts have determined that "'[v]oluntarily,' in this context, means 'proceeding from the will: produced in or by an act of choice.'" *Id.* at 598 (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY 2564 (1993)). "An employee leaves work voluntarily when he leaves of his own accord, as opposed to being discharged, dismissed, or laid off." *Firmand v. Univ. of Mo.*, 628 S.W.3d 434, 437 n.2 (Mo. App. S.D. 2021) (quoting *Kimble*, 388 S.W.3d at 640). In interpreting section 288.050, "Missouri courts 'have required that an employee not have caused his dismissal by . . . ***his choosing not to be employed.***'" *Kimble*, 388 S.W.3d at 640 (quoting *Valdez*, 349 S.W.3d at 455) (emphasis in original). Therefore, "[t]he phrase 'left work voluntarily,' as used in [section 288.050.1(1)], actually means 'left employment voluntarily,' or 'voluntarily quit employment' . . . [that which] we usually call a resignation or an abandonment of a job[.]" *Id.* (quoting *Johnson v. Div. of Emp't Sec.*, 318 S.W.3d 797, 800 (Mo. App. W.D. 2010)).

The question framed by Ekres's first four points on appeal is whether Ekres, of her own accord, chose not to be employed by Franklin by moving to New York state to work remotely during the COVID-19 pandemic, or by indicating she would not return to St. Louis to work. Ekres "bears the burden of establishing that [she] was discharged and did not voluntarily quit." *Turner v. Mitch Murch's Maint. Mgmt. Co.*, 436 S.W.3d 222, 226 (Mo. App. E.D. 2013) (citation omitted).

11

The Commission made a factual finding that "[p]ursuant to the existing contractual requirements between the employer and the client business, the claimant was required to be *attached to* an office of the employer in St. Louis, Missouri." (Emphasis added.) The Commission made a related legal conclusion that Ekres could no longer meet the condition of her employment which required that "she be *associated with* an office of [Franklin] in St. Louis, Missouri." (Emphasis added.) The Commission thus concluded that Ekres voluntarily quit her employment with Franklin on March 31, 2020. As no one contests that Ekres was working remotely for Franklin's St. Louis office while living in New York state, the Commission's finding and conclusion necessarily mean that the Commission concluded that Ekres was required by Franklin to work remotely from St. Louis, Missouri as of the date she was separated from employment.

No evidence supports the finding that a contract between Franklin and Ameren Missouri required Ekres to work remotely in St. Louis, Missouri. When expressly asked about that subject, Trimble testified:

> [Tribunal]: And then the position that [Ekres] held . . . was that a position that [] was not entitled to work remotely from another state?
>
> [Trimble]: *Correct, outside of the pandemic*.
>
> [Tribunal]: *During the pandemic she could have worked [] her position [] out of state, such as in New York?*
>
> [Trimble]: *Yes.* We were allowed or are allowing employees to work remotely. However, as I indicated, that *they would need to be in [St.] Louis at the time of resuming normal operations and at that point, we had no determination of when that would be but[,] yes. She could have*.

12

(Emphasis added.) Trimble's testimony established that under non-pandemic circumstances, Franklin's contract with Ameren required a "certain amount of positions" to be "in [the] city of [St.] Louis, Missouri to do the work," but that during the pandemic, all employees were allowed to work remotely, with the expectation that "they would need to be in [St.] Louis at the time of resuming normal operations." In fact, Trimble testified that Franklin's written policy requiring advance approval from management to work remotely was suspended as a result of (and during) the pandemic. There was no evidence presented supporting a conclusion that Franklin's contract with Ameren Missouri required Ekres's remote work to be performed from St. Louis, Missouri during the pandemic.

Similarly, no evidence supports the Commission's conclusion that after moving to New York, Ekres "could no longer meet a condition of her employment; namely, that she be associated with an office of the employer in St. Louis, Missouri." The Commission supported this conclusion by drawing an analogy to cases noting the "requirement of a specialized license." The Division of Employment Security ("Division") advances the same argument on appeal, relying on *Board of Education of City of St. Louis v. Labor and Industrial Relations*, 633 S.W.2d 126 (Mo. App. W.D. 1982), and *O'Neal v. Marantha Village, Inc.*, 314 S.W.3d 779 (Mo. App. S.D. 2010), two cases dealing with specialized licensure as a requirement of employment in teaching and nursing, respectively. The Division argues that "[w]hile [these] cases generally deal with certifications or licenses [in the context of teaching and nursing], the rationale is equally applicable to failing to maintain another standard of employment, such as a geographical one to be in the St. Louis area."

13

We disagree. In both *Board of Education* and *O'Neal*, the claimants each acknowledged that they were aware that receiving a certification was a requirement of their continued employment. 633 S.W.2d at 133; 314 S.W.3d at 783. Further, the employers, by continuing to employ both claimants, would have violated state laws regulating the teaching and nursing fields. *Bd. of Educ.*, 633 S.W.2d at 127 (section 168.081 prohibited the school board from employing the teacher without a permanent teaching certificate); *O'Neal*, 314 S.W.3d at 782-83 (section 198.082 required nurse to receive certification within four months of employment). Neither of these factors is present here. The Commission found that Ekres reported her intended move to New York state in advance of the move. As previously noted, no evidence supports a finding that Ekres's remote work from New York state during the pandemic violated Franklin's policies, any contract between Franklin and its client, or the law. *See Lentz v. Home Sec. of Am.*, 380 S.W.3d 1, 6 (Mo. App. E.D. 2012) ("Unlike in *Board of Education*, . . . Employer was not prohibited by law from continuing to employ Employee [and this] is not a case where Employee took the job knowing it would end on a certain date due to his lacking a professional license or qualifications." (citing *Bd. of Educ.*, 633 S.W.2d at 133)). The Division "seems to be confusing the issue of whether the employer had the right to terminate [Ekres] (and it clearly did) with the issue of whether [Ekres] can be said to have quit [her] job voluntarily." *Valdez*, 349 S.W.3d at 457.

We therefore agree with Ekres that no substantial or competent evidence supports the Commission's finding that on March 31, 2020, Ekres voluntarily quit her employment

14

because she was working remotely from New York state in violation of a known condition of her employment, or a known policy of her employer.

That brings us to the subject of Ekres's willingness to return to St. Louis to work had she been asked. A review of the record as a whole supports a conclusion that as of March 31, 2020, Franklin was operating under the impression that the need to require employees to work remotely would be short-lived. Trimble testified that as of that date, Franklin "had full intention that it [would be] a short tenure of working from home." A review of the record as a whole also supports a conclusion that as of March 31, 2020, Franklin believed that it would not be able to support Ekres as an out-of-state remote worker *after* in-person operations resumed.

But, these facts, though supported by substantial, competent evidence, cannot support the conclusion that Ekres voluntarily quit her employment on March 31, 2020. The Commission heard conflicting evidence about whether Ekres was asked during the March 31, 2020 telephone call with two of her supervisors about returning to work in St. Louis. The Commission resolved this conflicting testimony by finding that "[n]o discussion occurred concerning a return to the St. Louis area by [Ekres]." Knowledge that an act could cause the cessation of employment is essential in order to conclude that an employee voluntarily quit their employment. *See O'Neal*, 314 S.W.3d at 783 ("Claimant testified that she was aware that completing the classes was a requirement of her employment[.]"); *Valdez*, 349 S.W.3d at 459 ("Unlike the claimants in *Board of Education* and *O'Neal*, we cannot see that Valdez made any 'choice' that affects his qualification for benefits. Valdez did not choose a job he knew would be temporary unless he promptly met some

15

contingency."); *Lentz*, 380 S.W.3d at 6 ("This is not a case where Employee took the job knowing it would end on a certain date due to his lacking a professional license or qualifications."); *Ayers v. Sylvia Thompson Residence Ctr.*, 211 S.W.3d 195, 199 (Mo. App. W.D. 2007) (Employee "was aware of Employer's policy that an employee's failure to show up or call each day to inform Employer that he would be absent is considered job abandonment or voluntary termination."). Because the Commission found that Franklin had no discussion with Ekres about returning to St. Louis, either immediately or when in-person operations resumed, the Commission could not have concluded that Ekres voluntarily quit her employment on March 31, 2020 because she was unwilling to return to work in St. Louis, though she knew she was required to do so.

We therefore agree with Ekres that the record as a whole cannot support a conclusion that Ekres voluntarily quit her employment on March 31, 2020 because she knew that Franklin required her to return to St. Louis to work, either remotely or after in-person operations resumed, but was unwilling to do so.

Finally, the Division argues that should we find that Ekres was involuntarily discharged, we should nevertheless affirm the Commission's Decision based on Ekres's misconduct. Section 288.050.2 provides that a claimant shall be disqualified from unemployment benefits if the "deputy finds that [she] has been discharged for misconduct connected with [her] work[.]" The Division relies on section 288.030.1(23)(e), which defines "misconduct" as including a "violation of an employer's rule, unless the employee can demonstrate that . . . she did not know, and could not reasonably know, of the rule's

16

requirements," "[t]he rule is not lawful," or "[t]he rule is not fairly or consistently enforced[.]"

The Commission never addressed the issue of misconduct because Franklin never alleged that Ekres committed misconduct. We "may not address an issue that was not determined by the Commission."[3] *Renda v. Eastern Metal Supply of Mo., Inc.*, 414 S.W.3d 556, 560 (citing *Taylor v. St. Louis Arc, Inc.*, 285 S.W.3d 775, 776 (Mo. App. E. D. 2009)); *see also Davis v. Transp. Sec. & Div. of Emp't Sec.*, 295 S.W.3d 594, 597 (Mo. App. E.D. 2009) ("Nothing in the record suggests that Employer alleged misconduct on Claimant's part. . . . 'Issues not raised before the Commission may not be raised on appeal.'" (quoting *Jones v. GST Steel Co.*, 272 S.W.3d 511, 515 (Mo. App. W.D. 2009)). In fact, contrary to the Division's argument on appeal, Trimble testified before the Tribunal that Ekres's work had been satisfactory, and that Ekres was not violating any rule by working remotely from New York state during the pandemic.

The Commission's findings and conclusions that Ekres voluntarily quit her employment are not supported by sufficient competent evidence. Ekres was involuntarily discharged and is entitled to an award of benefits.

Points one through four on appeal are granted. Point five on appeal is denied as moot.

---

[3]The Division points to *Con-Way Truckload, Inc. v. Wood*, 511 S.W.3d 478, 486-87 (Mo. App. W.D. 2017), where this Court remanded a matter to the Commission for further findings where the Commission failed to make "findings or conclusions specifically directed toward a discussion of misconduct pursuant to section 288.030.1(23)(e)." However, in that case, the employer properly raised the issue of misconduct pursuant to section 288.030.1(23)(e) and thus "the Commission failed to address an issue that was squarely before it." *Id.* at 487. That is not the case here, as Franklin never alleged misconduct by Ekres.

17

## Conclusion

The Commission's Decision finding that Ekres is disqualified for benefits pursuant to Chapter 288 because she voluntarily quit her employment without good cause is reversed. We remand this matter for removal of the disqualification and for entry of an award of benefits.

_____
Cynthia L. Martin, Judge

All concur

18